DECISION AND JOURNAL ENTRY
Appellant-defendant Bobby Petty appeals from his convictions in the Summit County Court of Common Pleas on one count of engaging in a pattern of corrupt activity, one count of conspiracy to engage in a pattern of corrupt activity, and one count of trafficking in cocaine. We affirm in part and reverse in part.
 I.
On October 16, 1998, the Summit County Grand Jury rendered a one hundred twelve count indictment involving thirty-one defendants, including Defendant. The indictment alleged that Defendant committed one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A), one count of conspiracy to engage in a pattern of corrupt activity, in violation of R.C.2923.01(A)(2) and 2923.32(A), one count of trafficking in cocaine, in violation of R.C. 2925.03(A), and one count of possession of cocaine, in violation of R.C. 2925.11(A). Defendant pleaded not guilty to the charges against him.
In the period prior to trial, Defendant was initially represented by Frank Pignatelli. A jury trial was set for March 22, 1999. On March 3, 1999, Pignatelli moved to withdraw as counsel. On March 12, 1999, Defendant's second trial counsel, Douglas Maher, entered an appearance and moved to continue the trial. The trial court granted Pignatelli's motion to withdraw on March 16, 1999.
On March 22, 1999, the first day of trial, the trial court overruled Defendant's motion to continue. Defendant was tried jointly with three other defendants listed in the indictment — Otis McDay, Danie Yeager, and Polly Petty (Defendant's mother). The trial lasted six days, with twenty-four witnesses testifying on behalf of the State. Nine of the witnesses were other people who had been indicted with the four defendants. Defendant did not present any witnesses or evidence. After deliberating, the jury found Defendant guilty of engaging in a pattern of corrupt activity, conspiracy to engage in a pattern of corrupt activity, and trafficking in cocaine but not guilty of possession of cocaine. The trial court imposed a six-year prison term for the engaging in a pattern of corrupt activity charge, a four-year prison term for the conspiracy charge, and a one-year prison term for the trafficking in cocaine charge. The trial court also ordered that the prison terms be served consecutively.
Defendant appeals, assigning twelve errors. We will address each in due course, consolidating related assignments of error to facilitate discussion.
 II.
A. Motion for Continuance
Defendant's eleventh assignment of error states:
 The Trial Court erred in refusing to grant Counsel's request for continuance submitted ten (10) days prior to Trial as, under the circumstances of this case, failure to grant a continuance constitutes an abuse of discretion.
Defendant argues that the trial court abused its discretion by denying his motion to continue the trial. Defendant contends that his second trial counsel, Douglas Maher, required more than ten days to prepare for trial and that he was prejudiced by the trial court's failure to allow Maher more time for trial preparation. We disagree.
We review a trial court's decision to grant or deny a continuance under an abuse of discretion standard. State v. Unger
(1981), 67 Ohio St.2d 65, syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
In determining whether to grant or deny a motion for a continuance, the trial court must balance "any potential prejudice to a defendant [against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Unger, 67 Ohio St.2d at 67.
 In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
 Id. at 67-68.
In evaluating these factors in the case at bar, the record shows that no prior continuances had been requested. Defendant's motion did not request any specific length of time needed for a continuance. On the first day of trial, Maher reiterated the request but added: "I'm asking for a reasonable continuance. I don't care if it's a matter of days." It does not appear that the requested continuance was for an improper purpose. However, the delay would have presented an inconvenience to the State and its numerous witnesses, who were prepared to go forward on March 22, 1999.
Based on the foregoing, we conclude that the trial court's denial of Defendant's motion for a continuance was not the product of passion, prejudice, partiality, or the like. Therefore, the trial court did not abuse its discretion.[1] Defendant's eleventh assignment of error is overruled.
B. Prosecutorial Misconduct
Defendant's first assignment of error states:
 The Trial Court erred in its conviction and sentencing of Defendant as certain misconduct of the prosecuting attorney violated the [Defendant's] right against self incrimination and due process in that the misconduct was material and prejudicial to the accused and denied the [Defendant] a fair trial.
Defendant argues that prosecutorial misconduct deprived him of a fair trial. He complains of three specific instances: First, he alleges that the prosecutor discussed prior trial testimony with a witness in front of other witnesses. Second, he asserts that the State used coercive measures to obtain the testimony of one of its witnesses. Third, he contends that the State asked another witness an inappropriate question that only served to prejudice Defendant. We will address each of Defendant's arguments.
"The test for prosecutorial misconduct is whether [the prosecutor's conduct was] improper and, if so, whether [the conduct] prejudicially affected substantial rights of the accused." State v. Lott (1990), 51 Ohio St.3d 160, 165. The ultimate issue is whether the defendant was deprived of a fair trial. See State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. The alleged misconduct must be evaluated in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402, 410.
1. Separation of Witnesses
The first alleged instance of prosecutorial misconduct is taken from the testimony of Frank Kocis, one of the thirty other people indicted with Defendant. A separation of witnesses had been ordered in the case. Counsel for codefendant Danie Yeager[2] cross-examined Kocis on his interactions with prosecutors and police officers:
 Q. [by Yeager's counsel]. How many times have you talked to either the police or the prosecutors when there's been other people that are witnesses in the same area?
 A. [by Kocis]. Whoever sits back here I guess would be a witness.
 Q. You're saying you had conversations with the police and the prosecutors in front of the other witnesses?
A. Uhm, a conversation?
Q. Yes.
A. Yeah.
 Q. And that conversation was loud enough obviously for the other people to hear?
A. Maybe.
Defendant argues that the prosecution violated the separation order by discussing prior testimony with Kocis and in front of other witnesses.
We first note that no objection or other action is made on the record with regard to the alleged violation of the separation of witnesses order. Thus, we can only take notice of the error if it rises to the level of plain error under Crim.R. 52(B). In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. State v. Lane (1995), 108 Ohio App.3d 477, 482.
We find no plain error. The record reveals that the cross-examination proceeded as follows:
 Q. Okay. And has anybody told you how other people have testified in this case?
A. Sure.
Q. Who has told you that, sir?
 A. Maybe people who were a witness here or have already testified.
 Q. How about the prosecutors or the police, have they ever told you how other people have testified?
A. No.
 Q. They haven't told you that certain people said certain things?
A. No.
The record clearly shows that prosecutors did not tell Kocis about prior testimony. There is also no evidence that any conversation between Kocis and prosecutors in front of other witnesses was heard by anyone else or dealt with any specific portion of Kocis' expected testimony. We cannot say that but for the alleged error the outcome of Defendant's trial would have been different.
 2. Witness Coercion
Next, Defendant complains of how the State obtained the testimony of Charles Capien, another of the individuals indicted with Defendant. Capien testified on Thursday, March 25, 1999. During cross-examination by codefendant Yeager's counsel, it was revealed that Capien had planned to plead not guilty to the charges against him, but that on Monday, March 22, 1999, at around noon, Capien received a telephone call from his attorney, who told him that if he did not go to the police station to talk with the police by 2:00 p.m. he (Capien) would be arrested and charged with additional offenses. Thereafter, Capien went to the police station, spoke with police, and agreed to cooperate with them. Defendant argues that Capien's coerced testimony was "clearly taint[ed]" by such conduct and that this form of coercion should not be tolerated.
Once again, we note that we review only for plain error, as no objection is found on the record. We decline to find plain error. Capien was fully cross-examined on the matter and the potential benefits that would accrue from his cooperation. The jury knew about it and was fully capable of understanding the implications of the coercion. In addition, Defendant has failed to demonstrate how he was prejudiced by the State's actions with Capien. The method used to persuade Capien to testify on behalf of the State did not deprive Defendant of a fair trial.
 3. Inappropriate Questioning
Defendant's final contention is that his right to a fair trial was violated by a question put to Jamie Rhoades, yet another person indicted with Defendant. After being cross-examined about what plea arrangements he had reached with the State, Rhoades was asked on redirect examination:
 Q. [by prosecutor]. Mr. Rhoades, your plea bargain with the State of Ohio is for you to testify truthfully; is that correct?
A. [by Rhoades]. That's true.
 Q. And to your knowledge, anyone and everyone that was arrested certainly was given the same opportunity to cooperate with the police?
[Counsel for Yeager]: Objection.
[Counsel for Defendant]: Objection.
THE COURT: Overruled. Do you know.
[Rhoades]: Can you ask me that again?
* * *
 Q. Is it your understanding that everyone was given the opportunity to cooperate with the police as you did?
 A. I don't know who all has, but I know I'm not the only one.
Defendant argues that the question violates his right against self-incrimination and that "[a] reading of the question shows there was no possible way for the witness to answer the question and it was simply a statement being made by the prosecutor for the benefit of the jury."
We conclude that there was no violation of Defendant's right to a fair trial. Rhoades testified that he did not know who had been given an opportunity to cooperate with police, but that he Cwas not the only one given that opportunity. As was evidenced during the trial, nine of the people indicted with Defendant, including Rhoades, received plea bargains and testified for the State. The issue of these witnesses' credibility was clearly before the jury. The question did not comment upon any negotiations with Defendant or Defendant's right to be free from self-incrimination. We cannot say that the outcome of the trial would have been different absent the question at issue.
In sum, Defendant was not deprived of a fair trial by the three alleged instances of prosecutorial misconduct. The first assignment of error is overruled.
 C. Manifest Weight of the Evidence
Defendant's second assignment of error states:
 The Trial Court incorrectly overruled Defendant's motion for acquittal under Criminal Rule 29 as there was insufficient evidence to convict him of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) and conspiracy to engage in a pattern of corrupt activity, a violation of [R.C.] 2923.01(A)(2), in that the convictions were against the manifest weight of the evidence presented.
Defendant's third assignment of error states:
 The Trial Court incorrectly overruled [Defendant]'s motion for acquittal under Rule 29 as there was insufficient evidence to support a conviction for engaging in a pattern of corrupt activity or conspiracy to engage in a pattern of corrupt activity as Defendant was found not guilty of one of the predicate offenses necessary for conviction and reliance upon a singular predicate offense is insufficient to sustain a conviction.
Defendant's fourth assignment of error states:
 The Trial Court incorrectly overruled [Defendant's] motion for acquittal under Rule 29 as to Count 65 as there was insufficient evidence to convict the Defendant of the charge of trafficking in cocaine and the conviction therefore was against the manifest weight of the evidence.
Defendant's eighth assignment of error states:
 The Trial Court erred in not granting Defendant's Rule 29 motion for acquittal as his convictions for engaging in a pattern of corrupt activity (R.C. 2923.32) and conspiracy to engage in a corrupt activity [sic] (R.C. 2923.01) were not supported by the manifest weight and sufficiency of the evidence as there was no showing of the existence of an enterprise, finding of the requisite predicate acts, and/or demonstration of a pattern of corrupt activity.
In his second, third, fourth, and eighth assignments of error, Defendant argues that his three convictions were against the manifest weight of the evidence.[3] We shall address each offense individually.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 1. Engaging in a Pattern of Corrupt Activity
Defendant was convicted on one count of engaging in a pattern of corrupt activity. R.C. 2923.32(A)(1) states: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity[.]" As used in the statute, "`[e]nterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C).
 "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
R.C. 2923.31(E). At least one of the incidents of corrupt activity must be a felony. Id. The two or more incidents of corrupt activity need not be supported by convictions, but they must be proven beyond a reasonable doubt. State v.Burkitt (1993), 89 Ohio App.3d 214, 222-23.
R.C. 2923.31(I) defines what activities may be regarded as "corrupt activity." Included in the statute are incidents that would constitute
 [a]ny violation of section * * * 2925.03 * * * of the Revised Code [trafficking in a controlled substance], [or] any violation of section 2925.11 of the Revised Code [possession of a controlled substance] that is a felony of the first, second, third, or fourth degree and that occurs on or after July 1, 1996, * * * when the proceeds of the violation * * * or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars, or any combination of violations described [above] when the total proceeds of the combination of violations * * * or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds five hundred dollars[.]
R.C. 2923.31(I)(2)(c). Possession of cocaine is at least a fourth degree felony "[i]f the amount of the drug involved exceeds five grams * * * of cocaine that is not crack cocaine or exceeds one gram * * * of crack cocaine[.]"[4] R.C.2925.11(C)(4)(b). Greater quantities of cocaine would result in felonies of greater degrees. See R.C. 2925.11(C)(4)(c)-(f).
In relation to the charges against Defendant, the State presented the testimony of eighteen witnesses, including eight people who were also charged in the indictment against Defendant. The testimony of these people showed that Defendant was frequently involved in the possession of or trafficking in cocaine and marijuana.[5] Lisa Hitt testified that she witnessed Defendant sell one-quarter or one-half ounce of cocaine to Eddie Matthews at least two times. William Roberts testified that he purchased cocaine from Defendant more than three times, and that he in turn would sell the cocaine to others. He further testified that on one occasion he sold one-eighth ounce[6] of cocaine that he had purchased from Defendant to an undercover police officer. Gloria Bolinger Roberts (William Roberts' wife) testified that she delivered one or two ounces of cocaine from Defendant to Danie Yeager several times during January and February of 1998. She also testified that the cocaine obtained from Defendant would be resold on the streets.
Larry Boso was also involved in the drug trade. He testified that he sold Defendant about a pound of marijuana a week and that he introduced Defendant to the cocaine trade. Larry also testified that Defendant engaged in a process called "rerocking" powder cocaine, whereby another powder was added to the cocaine and the whole was compressed to give the powder a uniform appearance.[7] Larry stated that in 1998 Defendant rerocked between one and two kilograms[8] of cocaine per week. Larry Boso's brother Edwin corroborated Larry's testimony as to Defendant's rerocking activities, testifying that he had rerocked cocaine for Defendant on more than one occasion. Edwin also testified that he delivered cocaine for Defendant on more than one occasion.
Charles Capien, Jamie Rhoades, and Brian Barnes all shared a house or apartment with Defendant at one time or another in 1997 or 1998. Capien testified that he shared an apartment with Defendant in Tallmadge and Cuyahoga Falls. He stated that Defendant sold large amounts of cocaine and that he delivered one or two ounces of cocaine to Danie Yeager for Defendant on at least two occasions. Rhoades lived with Defendant in a house on Kling Street in Akron. He testified that he bought at least one ounce of cocaine from Defendant on a weekly basis for about three months. Rhoades also stated that 55.22 grams of cocaine that was found in his room when the police executed a search warrant on the Kling Street house was purchased from Defendant. Barnes sometimes lived at the Kling Street house; prior to that time, he lived near or next door to Defendant in Tallmadge and Cuyahoga Falls. Barnes testified that he purchased one-quarter or one-half pound of marijuana from Defendant more than once and that he later purchased cocaine for personal use.
Various witnesses testified as to the price of cocaine and marijuana. There was testimony that the price of one ounce of cocaine was between $700 and $1300. One witness testified that he purchased marijuana for $300 to $500 per pound.
Having reviewed the record, we conclude that Defendant's conviction for engaging in a pattern of corrupt activity was not against the manifest weight of the evidence. There was an enterprise, with several persons being associated with Defendant in a drug ring. The jury had ample evidence that Defendant was involved in trafficking in cocaine or the possession of cocaine in amounts greater than five grams, and that the value of the cocaine involved was greater than $500. There was testimony that at least two of these related incidents of corrupt activity occurred.
Defendant asserts that the conviction is against the manifest weight of the evidence because most of the witnesses against him were admitted drug dealers and users and/or were also named in the indictment and had reached plea agreements with the State. Defendant also contends that there were inconsistencies in the testimony. However, these facts do not lead to a per se
determination that the witnesses were not credible. The determination of the credibility of the witnesses is primarily within the province of the jury. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Through extensive cross-examination of the witnesses, the jury was fully aware of the witnesses' possible interest in their testimony, their potential lack of credibility, and any inconsistent testimony. The evidence in this case does not weigh heavily in Defendant's favor.
Defendant also argues that he cannot be convicted of engaging in a pattern of corrupt activity because the jury found him not guilty of the one count of possession of cocaine. Defendant believes that because he was only convicted of trafficking in cocaine, there was only one "incident of corrupt activity," precluding a finding that a pattern of corrupt activity had taken place. See R.C. 2923.31(E). This argument is without merit. As we noted above, the incidents of corrupt activity need not be supported by an actual conviction. There was abundant evidence of other incidents of corrupt activity that would support a finding that a pattern of corrupt activity had occurred.
2. Conspiracy to Engage in a Pattern of Corrupt Activity
Defendant was convicted of one count of conspiracy to engage in a pattern of corrupt activity. R.C. 2923.01(A)(2) states: "No person, with purpose to commit or to promote or facilitate the commission of * * * engaging in a pattern of corrupt activity * * * shall * * * [a]gree with another person or persons that one or more of them will engage in conduct that facilitates the commission of * * * the specified offense." R.C. 2923.01(B) further requires that
 [n]o person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.
"[A]n overt act is an open act, done outwardly, without attempt at concealment, and performed pursuant to and manifesting a specific intent or design." State v. Papp
(1980), 68 Ohio App.2d 21, 23.
The indictment against Defendant alleged that he conspired with "Jamie Rhoades and/or Brian Barnes and/or Sean Snyder and/or Larry Roso [sic, Larry Boso] and/or Russell Golver and/or Ed Matthews and/or others[.]" As was discussed above, there was Cample testimony that Defendant had agreed to conduct drug transactions with Rhoades, Barnes, Larry Boso, and Eddie Matthews. Further, any one of the drug transactions mentioned above would constitute a substantial act in furtherance of the conspiracy. The testimony does not weigh heavily in favor of Defendant. Accordingly, the conviction for conspiracy to engage in a pattern of corrupt activity is not against the manifest weight of the evidence.
 3. Trafficking in Cocaine
Defendant was also convicted of one count of trafficking in cocaine. R.C. 2925.03(A) states that "[n]o person shall knowingly sell or offer to sell a controlled substance." When the controlled substance at issue is cocaine that is not crack cocaine, and the amount of cocaine involved is more than ten grams but does not exceed 100 grams, the offense is a third-degree felony. R.C. 2925.03(C)(4)(d).
Eddie Matthews testified that on July 30, 1997, Defendant went to his (Matthews') house and supplied him with an ounce[9] of cocaine. Matthews then sold the cocaine to a confidential informant, in the presence of Lisa Hitt and Dennis Sabbagh. Defendant was outside the house, working on an automobile. Matthews wanted to sell the cocaine for $900, because he had to repay Defendant, but the sale was consummated for only $800. Matthews testified that after making the sale he left the house and gave the money to Defendant. Hitt and Sabbagh testified to the same general sequence of events, although neither said that he or she witnessed Matthews pay Defendant. Frank Kocis testified that he was at Matthews' house that day, working on his own car as Defendant worked on another car. Kocis saw the confidential informant go into the house but did not see the transaction.
Defendant argues that Matthews' testimony was not credible because Matthews and his associates were known drug dealers and because Matthews received a generous plea agreement from the State. Defendant also contends that the conviction was against the manifest weight of the evidence because the testimony was uncontroverted that Defendant was not in the house when the sale to the confidential informant took place. However, as we noted previously, the jury was well aware of these circumstances and chose to believe these witnesses. The testimony supported a finding that on July 30, 1997, Defendant sold cocaine to Matthews. The conviction was not against the manifest weight of the evidence.
Defendant's three convictions were not against the manifest weight of the evidence. Accordingly, those portions of Defendant's second, third, fourth, and eighth assignments of error dealing with manifest weight are overruled.
D. Sufficiency of the Evidence
Defendant also argues that his convictions were not supported by sufficient evidence and that, as a result, the trial court should have granted his motion for acquittal. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the State. Id.
This court has held that "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts
(Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Because we have determined that Defendant's convictions were not against the manifest weight of the evidence, his arguments regarding the sufficiency of the evidence must also fail. The remaining portions of the second, third, fourth, and eighth assignments of error are overruled.
E. Allied Offenses of Similar Import
Defendant's fifth assignment of error states:
 The Trial Court erred and violated Defendant's rights when it imposed consecutive sentencing upon the Defendant for the violation of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity, as said consecutive sentencing scheme is in direct contradiction to that permitted by R.C. 2941.25.
Defendant's ninth assignment of error states:
 The Trial Court erred and violated Defendant's right to be free from double jeopardy when it convicted and sentenced him for both engaging in a pattern of corrupt activity under R.C. 2923.32 and conspiracy to engage in a pattern of corrupt activity per R.C. 2923.01.
Defendant argues in his fifth and ninth assignments of error that the trial court erred by permitting him to be found guilty of and sentenced for both engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity. He asserts that the two offenses are allied offenses of similar import and that convictions for both cannot stand under R.C. 2941.25. We disagree.
R.C. 2941.25 provides:
 (A) Where the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
However, R.C. 2923.32(B)(1) states in pertinent part: "Notwithstanding any other provision of law, a person may be convicted of violating the provisions of [R.C. 2923.32] as well as of a conspiracy to violate one or more of those provisions under [R.C. 2923.01]." In State v. Wilson (1996),113 Ohio App.3d 737, 748, this court stated that "[i]n the case of the offenses of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity, the General Assembly has specifically provided for separate punishments for those crimes." We choose to adhere to the precedent of this court.
By virtue of R.C. 2923.32(B)(1), Defendant's convictions are not allied offenses of similar import under R.C. 2941.25. As such, the trial court did not err by permitting Defendant to be convicted of and sentenced for both offenses. The fifth and ninth assignments of error are overruled.
F. Ineffective Assistance of Counsel
Defendant's tenth assignment of error states:
 The convictions of the Defendant should be reversed as counsel for Defendant was ineffective in providing appropriate legal assistance thereby violating Defendant's constitutional right to effective counsel.
Defendant asserts that he received ineffective assistance of counsel from his prior attorney, Frank Pignatelli. Defendant contends that Pignatelli was ineffective because he failed to file pretrial motions and because Pignatelli's sudden withdrawal from the case left Defendant's second trial counsel, Douglas Maher, with only ten days to conduct discovery and prepare for trial. Defendant argues that Pignatelli's actions deprived him of his constitutional right to effective counsel. We disagree.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate. State v. Smith (1985),17 Ohio St.3d 98, 100.
Assuming arguendo that Pignatelli violated an essential duty to his client, Defendant has not demonstrated that he was prejudiced by Pignatelli's allegedly ineffective representation. In addressing Defendant's eleventh assignment of error, we determined that the trial court did not abuse its discretion by failing to grant Maher's motion for a continuance. We also conclude that the failure to have more than ten days to prepare was not prejudicial. Defendant has not shown this court what discovery was undone at the time of trial that would have resulted in the outcome of the trial being any different. Further, Defendant has only made vague reference to "distinct motions" that should have been made prior to trial. Defendant has failed to enumerate what motions should have been made, much less how he was prejudiced by Pignatelli's failure to file those motions.
We conclude that Pignatelli's representation did not violate Defendant's constitutional right to effective assistance of counsel.[10] Defendant's tenth assignment of error is overruled.
G. Sentencing Issues
Defendant's sixth assignment of error states:
 The Trial Court erred in sentencing the Defendant to prison and further to consecutive sentences as imprisonment and the imposition of consecutive sentencing was in direct violation of R.C. 2929.14(B).
Defendant's seventh assignment of error states:
 The Trial Court erred in imposing the stated sentence upon Defendant as it is violative of the law of the State of Ohio and, pursuant to R.C. 2953.08, the Defendant is entitled to appeal as a matter of right the imposition of the sentence.
In his sixth and seventh assignments of error, Defendant takes issue with the prison sentences imposed upon him. The trial court imposed a six-year term for engaging in a pattern of corrupt activity (a first degree felony), a four-year term for conspiracy (a second degree felony), and a one-year term for trafficking in cocaine (a third degree felony). The trial court also ordered that the three sentences be served consecutively. Defendant argues that the trial court erred by sentencing him to consecutive prison terms greater than the minimum term for the three convictions. He also contends that the sentences are not supported by the record.
R.C. 2929.14(B) governs the sentence that may be imposed by a trial court when the defendant is convicted of a felony, a prison sentence is imposed, and the defendant has not previously served a prison term. Under those circumstances, the minimum sentence for the felony offense must be imposed unless the trial court "finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."Id.
In the case at bar, the trial court did comply with R.C.2929.14(B). At the sentencing hearing, the trial court imposed prison terms greater than the minimum for the convictions for conspiracy and engaging in a pattern of corrupt activity. The trial court found on the record that the minimum term for those offenses would demean the seriousness of the offenses. Therefore, the trial court did not err by imposing a sentence greater than the minimum for those offenses.
Similarly, R.C. 2929.14(E)(4) requires a trial court to make three findings before prison terms may be imposed consecutively.
[T]he court may require the offender to serve the prison terms consecutively if the court finds [1] that the consecutive service is necessary to protect the public from future crime or to punish the offender and [2] that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and [3] if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 Id. The trial court must also give "its reasons for imposing the consecutive sentences." R.C. 2929.19(B)(2)(c). See, also, State v. Edmonson (1999), 86 Ohio St.3d 324, 328-29.
In the case at bar, the trial court made the following statements relevant to consecutive sentences:
 THE COURT: You've been a pretty busy boy selling all this dope, haven't you? Been going on for a number of years also.
* * *
The Court imposes consecutive sentences. That was done because the Court feels that that is required to adequately protect the public and because of the serious nature of the crimes that this Defendant has committed and the harm he's committed to the community.
The sentencing record does not contain all of the findings required by R.C. 2929.14(E)(4), and the trial court did not state the reasons for its findings, as mandated by R.C.2929.19(B)(2)(c) and Edmonson. Therefore, we are compelled to reverse the sentence imposed by the trial court and remand the matter for resentencing in accordance with Edmonson. Defendant's sixth and seventh assignments of error are overruled in part and sustained in part.
H. Imposition of Fine for Engaging in a Pattern of CorruptActivity
Defendant's twelfth assignment of error states:
 The Trial Court erred at imposing the One Hundred Thousand Dollars ($100,000.00) fine as against Defendant for damages under the racketeering statute as such a finding was against the manifest weight and sufficiency of the evidence.
Defendant contends in his twelfth and final assignment of error that the trial court erred by imposing a fine of $100,000 on Defendant for the costs of investigation and prosecution, pursuant to R.C. 2923.32(B)(2)(c). He asserts that the evidence presented in the hearing on the matter does not support that sum.
We note that a transcript of the hearing at issue is not found in the record on appeal. An appellant has the responsibility of providing the reviewing court with a record of the facts, testimony, and evidentiary matters which are necessary to support the appellant's assignments of error. Volodkevich v.Volodkevich (1989), 48 Ohio App.3d 313, 314. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. Because there is no transcript of the hearing held under R.C. 2923.32(B)(2), we cannot review the merits of Defendant's argument. The twelfth assignment of error is overruled.
 III.
Defendant's sixth and seventh assignments of error are overruled in part and sustained in part. The remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reverse in part, and the cause is remanded for further proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
FOR THE COURT BATCHELDER, P.J., WHITMORE, J., CONCUR
[1] Cf. State v. Reynolds (1998), 80 Ohio St.3d 670, 674
(capital murder defendant was not prejudiced by the fact that his lead counsel had only fourteen days to prepare for trial).
[2] Yeager's trial counsel is also Defendant's counsel in the appeal at bar.
[3] Defendant also argues in the same assignments of error that his convictions were not supported by sufficient evidence, using the same standard of review. However, the manifest weight standard and the sufficiency standard are distinct concepts with different standards of review. The sufficiency arguments will be addressed in a separate section of this opinion.
[4] Five grams equals 0.1765 ounces, or a little more than one-sixth of an ounce.
[5] For the sake of brevity, we will not attempt to recount all of the evidence presented against Defendant.
[6] One eighth ounce equals 3.54375 grams.
[7] "Rerocking" does not involve transforming powder cocaine into crack cocaine.
[8] One kilogram equals thirty-six ounces, or 2.2 pounds.
[9] One ounce equals 28.35 grams.
[10] Defendant also argues that Maher "was not in `good standing' with the Supreme Court of Ohio at the time of the Trial" and that we "should take judicial notice of this readily available public fact." However, Defendant fails to direct this court to what this "readily available" information is. We decline to address Defendant's argument.