**The STATE of Ohio, Appellee,**

v.

**SEEBECK–HORSTMAN, Appellant.**

[Cite as *State v. Seebeck–Horstman* (1990), 67 Ohio App.3d 443.]

Court of Appeals of Ohio,
Montgomery County.

No. 11665.

Decided April 25, 1990.

*Ted E. Millspaugh,* Assistant Prosecuting Attorney, for appellee.
*David L. Hall,* for appellant.

WOLFF, Presiding Judge.

Betty L. Seebeck–Horstman was found guilty, after a bench trial, of six counts of aggravated trafficking and sentenced accordingly. She appeals, advancing a single assignment of error:

"The trial court erred when it found the appellant guilty of aggravated trafficking since sufficient evidence was presented to establish legal entrapment."

The offenses involved appellant's selling illegal drugs to an undercover detective of the Dayton Police, Frank Navarre, on six separate occasions between December 30, 1988 and January 17, 1989. Appellant admitted selling the drugs, but claimed she only did so as a result of being threatened by a police informant, Cindy Treski, and incessant phone calls from Navarre.

At the close of the evidence, the trial judge found that appellant had not sustained her burden of proving entrapment by a preponderance of the evidence. *State v. Doran* (1983), 5 Ohio St.3d 187, 5 OBR 404, 449 N.E.2d 1295. Prior to doing so, the trial judge discussed the five matters identified by *Doran* as relevant on the issue of a defendant's predisposition:

" * * * (1) [T]he accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the

criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity." *Id.* at 192, 5 OBR at 408, 449 N.E.2d at 1299.

The trial judge's discussion of the evidence, utilizing the *Doran* factors as a framework, was as follows:

"First, while there is no indication of previous criminal involvement, per se, for this defendant, there is evidence of previous criminal activity of a similar nature from a person in the home occupied by the defendant.

"Another factor to consider is the accused's ready acquiescence to the inducements offered by the police and that is clearly indicated from the testimony where she received $965 in less than three weeks.

"The defense has made much of the number of phone calls that were made in this case. The evidence indicates that this number of phone calls appears more to be a problem with logistics rather than a constant harassment of the defendant.

"Defendant admitted that she never failed to show up to meet Frank. She admitted that she picked the meeting place. She admitted that she got into his car.

"Now, the defendant did testify that she would put him off by telling him to call back so that she wouldn't be present when he called back. But this is contradicted by the fact that on one occasion, she also testified that after doing this, telling him to call back so she wouldn't be there, she was on her way out of the door with her children, answered the phone and then interrupted her trip to McDonald's with the children to make a sale to Frank on the way.

"Another factor to consider is knowledge in the area of the criminal activity charged. That, too, is present here in this case. The defendant used two aliases, one on the phone, one in person. Her manner of setting up the buys and the conversation on the phone shows planning and forethought.

"Additionally, she negotiated different numbers of pills of different strengths on various occasions and it is uncontradicted that after arrest, the defendant told the police officer that he was her best customer.

"In looking at another factor, the defendant admitted the access to a large number of pills and also access to prescriptions through her doctor.

"A final factor laid out by the Supreme Court is the willingness to involve herself in the criminal activity. Again, the number of phone calls itself does not indicate any unwillingness. Some of the phone calls contain language, of what do you want, or other facts along that line.

"What is not in the record is any indication anywhere that the defendant said no; said don't call me back; said, leave me along [*sic*], or anything of the like nature.

"The evidence shows at most that Detective Navarre merely offered the opportunity or facilitated—or facilities for the commission of the offense.

"The Court finds that the defendant has not proven her affirmative defense of legal entrapment. Therefore, the Court finds the defendant guilty on all six counts of aggravated trafficking."

Appellant's approach on appeal is to disparage the trial judge's analysis of the evidence, *supra,* and thereby discredit her ultimate determination that appellant failed to establish the defense of entrapment.

 Before considering her specific arguments, we point out, as did the trial judge, that the five factors identified by *Doran* are "by no means an exhaustive list" of matters relevant to the issue of predisposition. *Id.* More important, the ultimate issue to be determined on the entrapment defense is not how many *Doran* factors are implicated, or the quality of the evidence relating to those factors. The ultimate issue is whether a preponderance of the evidence establishes that the accused lacked the predisposition to commit the offense with which he is charged. *Id.,* 5 Ohio St.3d 193, 5 OBR at 409, 449 N.E.2d at 1300. While a discussion of the *Doran* factors and the evidence relating to them is a useful analytical tool, it can take the trial court and a reviewing court only so far. Finally, this case involved the testimony of Detective Navarre and appellant. The evidence was conflicting and was subject to differing interpretations. Whom to believe, the significance of the facts as found, and the inferences to be drawn were matters commended to the trial court.

### *Doran* Factor 1

 Appellant contends the trial court should not have accorded any significance to the fact that she shared her home with a man involved in selling drugs where there was no evidence that she had done so prior to sales to Detective Navarre. The trial court acknowledged that there was no indication of prior drug sales by appellant. We are not prepared to say that appellant's sharing her home with one who sells drugs was an impermissible consideration on the issue of appellant's predisposition to do so.

### *Doran* Factor 2

 Appellant contends that on the issue of "ready acquiescence," the trial judge was wrong to consider the amount of money she received and wrong to not consider Navarre's constant calling and threats by Cindy Treski. We fail

to see how appellant's receiving almost $1,000 for six drug sales within the three-week period cannot be a reasonable consideration on the question of ready acquiescence. The trial court's observation that the number of phone calls bespoke logistics rather than harassment finds support in the record. The trial judge was also at liberty to disbelieve or accord little significance to appellant's testimony about being threatened.

### *Doran* Factor 3

Appellant contends that the evidence recited by the trial judge as demonstrating "expert knowledge" is susceptible to an innocent explanation, which was a desire to avoid Detective Navarre. The record supports the interpretation of the evidence accorded it by the trial judge, who apparently chose to disbelieve appellant's explanation. We will not disturb an interpretation that finds ample support in the record.

### *Doran* Factor 4

Appellant contends that her "ready access" to drugs was not established because her supply consisted of drugs she had found—an event unlikely to reoccur—and she could not expect to obtain prescriptions indefinitely. Regardless of whether appellant had ready access to an unlimited supply of drugs, appellant was able to supply Navarre six times in less than three weeks. Furthermore, we do not read the trial judge's remarks as doing more than alluding to what appellant admitted. The trial court could have reasonably concluded that appellant had ready access to other sources as well. In any event, as we observed above, the absence of one or more *Doran* factors does not control the ultimate determination of whether lack of predisposition has been established.

### *Doran* Factor 5

As we observed earlier, it was within the trial judge's province to believe or disbelieve appellant's testimony that she sold drugs only because of the insistence of Navarre and the threats of Treski.

The record supports the trial judge's ultimate determination that appellant failed to establish that she lacked a predisposition to sell drugs.

The assignment is overruled.

*Judgment affirmed.*

WILSON and BROGAN, JJ., concur.