The STATE of Ohio, Appellee,

v.

BURKITT, Appellant.

[Cite as *State v. Burkitt* (1993), 89 Ohio App.3d 214.]

Court of Appeals of Ohio,
Clark County.

No. 2936.

Decided May 19, 1993.

*Stephen A. Schumaker,* for appellee.

*John H. Rion,* for appellant.

---

FREDERICK N. YOUNG, Judge.

Richard Burkitt appeals from his conviction and sentence for violation of R.C. 2923.32, Ohio's corrupt activity statute, and for aggravated drug trafficking in violation of R.C. 2925.03. Appellant was sentenced to eleven to seventy years in prison, fined $36,000, additionally ordered to pay three times the state's "buy money," $75,300, and made to forfeit seven vehicles pursuant to the forfeiture provision of the corrupt activity statute.

The indictment alleges that, since the beginning of 1987, appellant had been active in a criminal enterprise formed for the purpose of selling drugs, and headed by one Raymond Tackett. Appellant, Tackett and their associates bought

marijuana in large quantities and repackaged, distributed, and sold it in Clark County. Appellant and an associate continued the enterprise after Tackett was incarcerated.

Around October 1990, a Mr. Medley, a longtime associate of the appellant, began acting as the state's informant in return for favorable sentencing in his own case. In this capacity, he recorded a number of drug transactions between himself and the appellant, which culminated in the appellant's arrest.

After a bench trial, the appellant was found guilty on all counts of the indictment, of which ten related to drug trafficking in violation of R.C. 2925.03, and one to a violation of R.C. 2923.32, Ohio's corrupt activity statute. Each drug transaction between Medley and the appellant was made a separate count of drug trafficking in the indictment. Each count was also alleged as a predicate act to support the corrupt activity charge.

Drug trafficking is listed as a "corrupt activity" in R.C. 2923.31(I)(2)(b), when the proceeds of the sale or the value of the contraband sold or possessed exceeds $500. Prior corrupt activities may be proven as predicate acts (R.C. 2923.31[E] ) that tend to show a "pattern" as R.C. 2923.32(A) requires.

The appellant assigns four errors: that he was entrapped into violation of the corrupt activity statute, that the evidence was insufficient to support the forfeiture of four of his vehicles, that Dawn Burkitt was incompetent to testify about anything that occurred during the course of their common-law marriage, and that the court failed to hold a hearing on the issue of whether his fine was reasonable or whether he was able to pay it.

I

First Assignment of Error

"The trial court committed prejudicial error by finding appellant guilty of R.C. § 2923.32, because appellant proved, by a preponderance of the evidence, that he was entrapped."

Entrapment is an affirmative defense and requires the accused to show, by a preponderance of the evidence, that he was not predisposed to commit the crime with which he was charged. *State v. Doran* (1983), 5 Ohio St.3d 187, 193, 5 OBR 404, 409, 449 N.E.2d 1295, 1300. In Ohio, the burden of proof of entrapment is on the defendant. *Id.* Contrary to the appellant's argument, the state must prove only that the accused did participate in the affairs of an enterprise through a pattern of corrupt activity. It is the defendant's burden to demonstrate that he was not predisposed to do so. See, also, *State v. Seebeck–Horstman* (1990), 67 Ohio App.3d 443, 587 N.E.2d 359; *State v. Bowshier* (Mar.

18, 1993), Clark App. No. 2937, unreported, 1993 WL 81813. Public policy favors this allocation of the burden of proof, since it is certainly easier for the accused to show his own lack of predisposition than it is for the state to prove a predisposition as well as the commission of a crime. *Doran, supra,* 5 Ohio St.3d at 193, 5 OBR at 409, 449 N.E.2d at 1300.

The appellant argues that because the state afforded him the opportunity to sell marijuana to its undercover agent on several occasions, though he was not entrapped into each individual sale, he was entrapped into making all of the sales collectively and, therefore, into meeting the "pattern" element of the corrupt activity statute. This is a feckless contention, most simply because the appellant admits that he was predisposed to make each of the sales that make up the series. To say that he was predisposed to make one sale but not two is to say that he was not predisposed to make the second one.

The appellant offered insufficient evidence at trial to demonstrate that he was not predisposed to make any one sale; he has not proven that he was not predisposed to make all of them collectively.

Further, we wish to point out again that a collection of drug sales alone will not make a "pattern" under the corrupt activity statute: it will only tend to show a pattern. The appellant is right when he states that "while the evidence may tend to show that Appellant was predisposed to make an *isolated* marijuana sale, that is not the same thing as saying he was predisposed to engage in a *pattern* of selling marijuana," though he has misconstrued what makes a "pattern." Even the element of "pattern" in the corrupt activity statute is more complex than mere repeated engagement in the "corrupt activities" defined in R.C. 2923.31(I). These activities must additionally be "related to the affairs of the same enterprise, [and] not isolated or so closely related to each other and connected in time and place as to constitute a single event." See R.C. 2923.31(E); *State v. Hughes* (Mar. 13, 1992), Miami App. No. 90–CA–54, unreported, at 13, 1992 WL 52473.

The "pattern" element has a *mens rea* component as well, which is recklessness. See *Hughes, supra,* at 9–10. In sum, when the appellant, on more than one occasion, engaged in one of the corrupt activities listed in R.C. 2923.31(I), with heedless or perverse disregard for the fact that these activities were related to the affairs of the same enterprise, he met the "pattern" element of the corrupt activity statute.

The appellant does not argue that he was not predisposed to carry on the affairs of an enterprise through drug trafficking, and he does not deny that he acted with the requisite *mens rea.* He relies on the idea that he was not predisposed to make the sum of all the sales he was predisposed to make

individually. He did not satisfy the trial court, and does not satisfy us, that he was entrapped into violating the corrupt activities statute.

The first assignment of error is without merit and is overruled.

## II

### Second Assignment of Error

"The trial court's finding that certain items of personal property were subject to forfeiture was against the manifest weight of the evidence."

Once the state has proven every element of R.C. 2923.32 beyond a reasonable doubt, R.C. 2923.32(B)(3) requires the forfeiture of any property in which the defendant has an interest, and that was used or intended for use in a pattern of corrupt activity, or that was derived from or realized through a pattern of corrupt activity.

Forfeitures are odious, and accordingly we will not find a forfeiture unless the language of a forfeiture provision clearly and unambiguously demands it. See *State v. Lilliock* (1982), 70 Ohio St.2d 23, 26, 24 O.O.3d 64, 65–66, 434 N.E.2d 723, 725. The language of R.C. 2923.32(B)(3) requires that a defendant be convicted for a violation of the corrupt activity statute, or have pled guilty to a violation, or have been adjudicated delinquent by reason of a violation before forfeiture under this provision can be had. Without a determination of guilt, there will be no forfeiture. See *State v. Thrower* (1989), 62 Ohio App.3d 359, 371, 575 N.E.2d 863, 871. Forfeiture is an additional criminal penalty that may be imposed following a conviction under this statute (*id.* at 383, 575 N.E.2d at 879) and it is on the conviction that a forfeiture must stand.

Appellant's conviction followed a determination by the trial court that he had conducted or participated in the affairs of an enterprise through a pattern of corrupt activity, thereby meeting all of the elements of R.C. 2923.32(A). The separate counts of drug trafficking on which he was also convicted were the predicate acts explicitly relied on by the state to support appellant's corrupt activity conviction.

However, these incidents of drug trafficking only cover a period from October 1990 to May 1991. The pattern of corrupt activity alleged in the indictment, and of which appellant was convicted, covers a period from January 1, 1987 to May 1991. No predicate acts on the indictment were alleged to have taken place before October 1990.

As has been discussed above, at least two "incidents of corrupt activity," or "predicate acts," are required to satisfy the pattern element. The "two or more incidents of corrupt activity" do not need to be supported by

convictions themselves. R.C. 2923.31(E). Nevertheless, it must appear beyond a reasonable doubt that such predicate acts occurred. The state may not get a corrupt activity conviction on the strength of two incidents of drug trafficking and, merely to support a property forfeiture, relate the "pattern" back five years from the earlier of those incidents without also proving beyond a reasonable doubt that some other corrupt activity related to the same enterprise was conducted or participated in at the beginning of that five-year period.

This is enormously important to anyone whose property may be subject to forfeiture under this statute. In *State v. Moneymaker* (Feb. 21, 1992), Lake App. No. 90–L–15–130, unreported, 1992 WL 192002, the Court of Appeals for Lake County held that real property could not be subject to forfeiture under R.C. 2923.32(A)(2) unless the state established a connection between the "money used to acquire or maintain an interest in real property * * * [and] the *specific* pattern of corrupt activities which form the basis of the charge." (Emphasis *sic*.) *Id.* at 10.

We reject the state's contention that "[t]he fact that predicate acts were alleged in 1991 to support the broader allegation of corrupt activity charged in the body of the indictment does not reduce the approximate four-year time span [January 1, 1987 to May 5, 1991] covered by the indictment." In fact, it could. Appellant's automobiles cannot be subject to forfeiture in this instance unless it has been shown beyond a reasonable doubt that some other corrupt activity, related to the same enterprise, has been committed, marking the starting point for a specific pattern of corrupt activity to which the acquisition or use of these automobiles is related.

A violation of the corrupt activity statute can only be defined in time by reference to the predicate acts that tend to establish its pattern. It follows that a "pattern" cannot predate the earliest proven predicate act as a matter of law. This is not to say that the state must be capable of alleging specific dates, necessarily, but it must certainly allege a specific act reasonably near the beginning point of the alleged pattern. Any lack of specificity in dates will not be fatal to a prosecution unless it prejudices the accused's defense. *State v. Sellards* (1985), 17 Ohio St.3d 169, 172, 17 OBR 410, 412–413, 478 N.E.2d 781, 784.

The appellant has not challenged the sufficiency of the state's evidence insofar as it relates to corrupt activities he allegedly engaged in from January 1, 1987. We also note that the appellant has not argued that the indictment was defective in not listing the other predicate acts the state might seek to prove to support a conviction that extends from 1987 to 1991. The appellant was apparently unaware that the "pattern" alleged covered such a period until it was pointed out to him in the appellee's brief. However, he does suggest that the court should

not have considered evidence of corrupt activities he engaged in before the first of the state's controlled buys. "The indictment clearly set out what 'corrupt activities' could be considered by the trier of fact for the purpose of determining whether there was a 'pattern.'"

It appears that the indictment may in fact have been insufficient to notify the appellant of everything he could expect to have to defend himself against. Appellant has not raised the issue himself on appeal, and the record before us does not reflect that a timely objection was made before trial. He has waived any objection now. No defects in the indictment we find today will divest the court of subject matter jurisdiction and thereby nullify the conviction. See R.C. 2941.29 and *Trotwood v. Wyatt* (Jan. 21, 1993), Montgomery App. No. 13319, unreported, 1993 WL 9714. Accordingly, we can only reach this particular issue through the plain error rule.

The plain error rule gives a court discretionary power to address an issue that has not been raised on appeal, but that should be addressed in order to prevent a "manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808.

An indictment is to give a person accused of a crime notice that he must defend himself against charges that certain of his acts were criminal, and to afford him protection from any future prosecutions for the same offense. *State v. Sellards, supra,* 17 Ohio St.3d at 170, 17 OBR at 411, 478 N.E.2d at 783. Consequently, an indictment must lay out every element of the crime an accused is charged with. Crim.R. 7(B). A "[d]efendant is entitled to be apprised of the essential facts constituting the offense for which she is called upon to defend." *State v. Wohlever* (1985), 27 Ohio App.3d 192, 193, 27 OBR 231, 232, 500 N.E.2d 318, 320.

As the state must rely on predicate acts to show a pattern under the corrupt activities statute, it must include notice of the acts sought to be proven in the indictment. Due process requires that an accused have notice of what acts the state will seek to prove to support a conviction. Applying this principle to the case at hand, if the appellant had to defend himself against charges of drug trafficking in 1987 as well as in 1991, he should have been so notified in the indictment.

However, we cannot find plain error unless it appears that, but for the error, the result would have clearly been different. *State v. Wickline* (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 920; *State v. Cooey* (1989), 46 Ohio St.3d 20, 31, 544 N.E.2d 895, 910; and *State v. Long, supra,* 53 Ohio St.2d at 97, 7 O.O.3d at 181, 372 N.E.2d at 808. From the record before us, it seems that the

state did offer evidence that appellant had been involved in an enterprise of drug trafficking since 1987. It also appears that appellant's counsel did adequately cross-examine the state's witnesses. He did effectively impeach their testimony and did not merely object that it related to matters outside the scope of the indictment. We cannot say that, but for the insufficient notice in the indictment, the appellant would clearly not have been convicted of a pattern of corrupt activity that began in 1987.

Further, it is also the case that the corrupt activities proven at trial were other incidents of trafficking in marijuana. This is not a case where the state has alleged two predicate acts of drug trafficking in 1990 in the indictment and then at trial sought to prove an act of conspiracy to commit murder back in 1985 that it alleged was related to the same enterprise. In such a case, we could more readily find a prejudicial due process violation.

It remains to be considered whether the vehicles taken bore a sufficient relationship to the pattern of corrupt activities to make them properly forfeitable. The standard of proof at the sentencing stage of the proceedings is a preponderance of the evidence. *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 181, 569 N.E.2d 916, 919. The state had to show that it was more likely than not that the defendant had an interest in each item of property sought to be seized and that each item was acquired through the pattern of corrupt activity or intended for use in carrying on the pattern of corrupt activity. R.C. 2923.-32(B)(3). There must have been some connection between the property and the illegal conduct beginning in 1987 (*State v. Conley* [July 15, 1991], Preble App. No. CA90–11–023, unreported, at 11, 1991 WL 129796), though "the extent of the connection need not be great." *Casalicchio, supra,* 58 Ohio St.3d at 180, 569 N.E.2d at 919.

We will not reverse a judgment based on a preponderance of the evidence if there is "some competent, credible evidence going to all the essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. "An appellate court may not substitute its judgment in factual matters for that of the trier of facts * * *." *State v. Woods* (1985), 25 Ohio App.3d 35, 38, 25 OBR 108, 111–112, 495 N.E.2d 465, 468. " '[While] in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.' " *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 46, 560 N.E.2d 765, 769, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 410, 461 N.E.2d 1273, 1275–1276.

The court found seven of the vehicles listed on the indictment subject to forfeiture, and the appellant challenges the forfeiture of four of them—a 1979 El Camino, a 1969 Camaro, a 1978 Corvette, and a 1977 Seville—as being against the manifest weight of the evidence. Applying the great deference due a trial court in making factual determinations, we cannot say that the court's finding that these four cars bore some connection to the pattern of corrupt activity was unsupported by any evidence.

The 1979 El Camino had apparently been bought around 1989 with $1700 in cash that appellant removed from bundles he had wrapped in rubber bands and stuffed into a shaving kit. Moreover, there was testimony that the car was used to transport marijuana.

Dawn Burkitt testified that the 1969 black Camaro had been used in drug trafficking, either because she saw it being done or because appellant had told her about it. Kevin Dayka testified the car had been bought since 1988, so any connection with drug trafficking will be to the pattern appellant has been convicted of here.

The 1978 white Corvette was bought in 1990 with $4,300 cash and another vehicle. During the course of Steven Moody's connection with the investigation of the appellant, he saw the appellant and the state's informant together in the Corvette. The trial court could reasonably infer from the circumstances that the two were conducting illicit business in the car.

The 1977 Cadillac Seville was apparently also bought with cash and Dawn Burkitt was quite firm in her testimony that the appellant used the car to deliver marijuana.

During the entire time of the pattern of corrupt activity, the appellant was acquiring assets even in addition to those listed above. His taxable income between 1987 and 1991 was only $15,000, however. While the state must still demonstrate a connection between the proceeds of an illicit enterprise and the property sought to be forfeited (*State v. Moneymaker, supra*, at 9 and 10), the fact that a low legitimate income could not support the purchases a criminal defendant has made during a period of proven corrupt activity can tend to support the inference that the property was purchased with illicit proceeds.

There appears to be some competent, credible evidence showing that the use of these four cars or the circumstances of their acquisition was connected to the pattern of corrupt activity for which the appellant was convicted. We can find no abuse of discretion in the trial court's order that they be forfeited.

Appellant's second assignment of error is overruled.

## III

### Third Assignment of Error

"The trial court committed prejudicial error in allowing appellant's ex-wife to testify, because her testimony pertained to events which occurred during the couple's common-law marriage."

The spousal privilege, found in R.C. 2945.42, is available to spouses in a common-law marriage. See *United States v. Goble* (C.A.6, 1975), 512 F.2d 458, 474. If, as the appellant contends, he and Dawn Burkitt had a common-law marriage from roughly 1988 to April 1991, then Dawn Burkitt was incompetent to testify against him about private acts or communications between the two of them during that time.[1]

Common-law marriages have never been favored in Ohio[2] and in order to prove a common-law marriage, one must show, by clear and convincing evidence, that (1) there was an agreement to marry *in praesenti* between parties competent to marry, (2) this agreement was followed and accompanied by cohabitation as man and wife, and (3) the "community and circle" in which they moved considered them married. *Nestor v. Nestor* (1984), 15 Ohio St.3d 143, 145, 15 OBR 291, 292, 472 N.E.2d 1091, 1094.

The most important element supporting a common-law marriage is "a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man and wife * * *. [The absence of an] agreement to marry *in praesenti* * * * precludes the establishment of such a relationship even though the parties live together and openly engage in cohabitation." *Id.* at 146, 15 OBR at 293, 472 N.E.2d at 1094.

In this instance, there was not only no clear and convincing proof that from roughly 1988 the couple considered themselves married, but there is impressive proof that they did not. The appellant did not testify at trial. Dawn Burkitt apparently did not believe herself married to the appellant prior to their April 1991 wedding. She testified that in February 1991, "I wasn't married—we didn't get married till April." Further, she testified, she and appellant had "planned a wedding the summer right before my daughter—right when my daughter was born but [the appellant] said that he wouldn't marry me because I was a mental case or something along that line." It appears that the appellant did not consider himself married before April, either.

---

1. Dawn Burkitt and the appellant were no longer married at the time of trial.

2. Since October 10, 1991, they have been prohibited altogether. See R.C. 3105.12.

The evidence demonstrates that while Dawn and the appellant openly cohabited, they lacked the mutual agreement to be presently married that is the hallmark of a common-law marriage. It is plain that the April 1991 wedding was not a mere solemnization of an existing marriage, but created a marriage where none had existed before. Dawn Burkitt was not incompetent to testify for that reason, and we can see no abuse of discretion in the trial court's so holding.

Appellant's third assignment of error is overruled.

## IV

### Fourth Assignment of Error

"The trial court's decision to impose a fine of three times the amount of funds spent by the state must be reversed, because the court failed to hold a hearing to determine the amount of the fine."

The corrupt activity fining provisions are found in R.C. 2923.32(B)(2). They provide that a fine may be imposed not exceeding the greater of three times the gross value the defendant gained, or three times the loss defendant caused, through his pattern of corrupt activity. In addition, the defendant may be made to pay court costs, as well as the reasonable costs of investigation and prosecution.

In this case, appellant was ordered to pay three times the state's "buy money," which was $25,100. This reflected gross gain from the drug sales he made to the state's agent, and also the state's loss in purchasing drugs from him during the investigation. Appellant's counsel stipulated that $25,100 was an accurate figure.

The section also provides that "the court shall hold a hearing to determine the amount of fine, court costs, and other costs to be imposed under this division." R.C. 2923.32(B)(2)(c). The appellant contends that this hearing may not be made a part of the sentencing hearing, but must be separate. Further, the appellant argues, the court was required to consider his ability to pay a fine before it imposed one.

We disagree that R.C. 2923.32(B)(2)(c) demands a hearing at which only the matter of fining may be settled. Where a sentencing hearing has been held, at which the offender has been given a full opportunity to say why the court should not impose the sentence or the fines it proposes, we cannot say that such a hearing was insufficient to meet the requirements of R.C. 2923.32(B), and that the court must hold another.

We agree that the court should consider the impact a fine imposed in addition to incarceration will have on an offender (R.C. 2929.14[A] ), but also note that the court is required to consider such things only if evidence of them is offered at the hearing. The appellant offered no such evidence at the hearing, though he was invited to do so. He did not object at the hearing to the amount of the fine, and he did not request an opportunity to demonstrate to the court that his resources could not support it. He has therefore waived any objection to the fine on appeal. See *Bowshier, supra,* at 13.

Appellant's fourth assignment of error is overruled.

*Judgment affirmed.*

GRADY, P.J., concurs.

FAIN, J., concurs in judgment.

FAIN, Judge, concurring in judgment.

In my view, a criminal defendant may, at the time of each of a series of offenses, have been predisposed to commit the particular offense, and yet not have been predisposed, at the outset, to become involved in a criminal enterprise, so that it will only have been at the state's importuning that the defendant has, in fact, become involved in a criminal enterprise. I do not regard this as a "feckless" defense, but rather as a defense that is not made out by the evidence in this record. In my view, the finder of fact could easily have found on this record that Burkitt was predisposed to become involved in a criminal enterprise. Accordingly, I join in overruling Burkitt's First Assignment of Error.

With respect to Burkitt's other assignments of error, I am in complete agreement with the opinion of this court.