On this appeal from a jury verdict and sentence resulting from a trial before Judge Bridget M. McCafferty, I respectfully dissent from the majority's decision on the fifth assignment of error, concur in part and dissent in part on the fourth assignment of error and concur with respect to the first through third assignments of error. I would vacate the sentence and remand for resentencing, not only as to the length of Annotico's prison term, but also for the amount of the fine as well because the proceedings failed to comply with R.C. 2929.18 and 2929.19.[1]
Annotico was sentenced as follows:
 I want to note for the record it would demean the seriousness of your offense to sentence you on the low end of this, and you were sentenced — or found guilty by a jury of your peers to two different offenses. In addition to that, I'm taking into account you do have a criminal history that you bring with you on this date and I have taken those factors into consideration in imposing sentence.
 I am going to sentence you consecutively for both counts. The first count I'm sentencing you to 9 years at Lorain Correctional Institute and an $18,000 fine, and for Count 2 I'm sentencing you to an additional 11 months and an additional $1,000 fine. Again, I think it would demean the seriousness of the offense to do anything less.
The journal entry, however, contained the rote recitation of statutorily required statements, none of which, of course, occurred at the hearing.[2] The majority, while holding that it was error to pronounce consecutive sentences without the findings required under R.C.2929.14(E)(4), tacitly approves the judge's inadequate sentencing procedure.
At least one goal of sentencing reform under Senate Bill 2 is to achieve greater consistency in sentences imposed for similar crimes committed by similar offenders. R.C. 2929.11(B). An offender should have the right to receive an appropriate sentence, regardless of the idiosyncrasies of the judge presiding over his case. Such consistency leads to greater predictability as well as increasing fairness. Providing greater detail in sentencing decisions not only allows review of the particular cases decided but creates a base for review of later decisions. Unlike the holding of the majority that excuses the imposition of a sentence equal to 99% of the maximum sentence for a first degree felony, I would find that the judge should be required to provide a basis in the record for the sentence imposed.
The majority approves the eleven month incarceration for a fifth degree felony merely because the judge spoke the magical incantation that a lesser sentence would demean the seriousness of the offense. They similarly justify the nine year first degree felony sentence by noting that because the judge mentioned a prior conviction for drug abuse and a prior conviction for domestic violence as factors she considered in imposing the sentence, it is an adequate basis for the sentence.
The majority's beautiful theory cannot withstand an attack by a brutal gang of facts. Before pronouncing sentence, the judge noted Annotico's pretty extensive criminal history : a 1993 drug possession charge for which he served a six month prison sentence, a 1995 conviction for domestic violence for which he served six months in prison and a 1998 minor misdemeanor charge of disorderly conduct for which he paid a $30 fine. The majority appears to find that a nine year sentence based upon this extensive criminal record and possession of 26 grams of crack cocaine is justified. If such contention could be maintained, is it not time to remove the blindfold from the eyes of the goddess that lawyers worship, so that she can see what is the matter with her scales?[3]
The only finding by the judge was her belief that sentencing Annotico at the low end of the applicable sentencing ranges and imposing concurrent sentences would demean the seriousness of the offense. Although the duty to make findings is less demanding than the duty to state reasons, the judge that makes findings must note that it engaged in the analysis set forth in the applicable statute. State v. Edmonson (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131, 134. Although the boilerplate statement in her journal entry states that [t]he court considered all of the required factors of the law, it is apparent she did nothing of the sort.
R.C. 2929.19(B)(2)(e) mandates that a judge give reasons for selecting the sentence:
 (e) If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term.
To avoid this mandate, the judge imposed the highest possible sentence, 119 months out of a maximum 120 months, by utilizing the loopholes in the sentencing reform legislation. Because the spore of this mode of sentencing finds fertile soil, takes root and may strangle the ideals of sentencing reform, we should not allow such attempts to succeed.
I recognize, as the majority points out, that the judge had no express statutory duty to make findings on the record or state her reasons for imposing the individual sentences,[4] because she did not technically impose the maximum sentences allowable. I find the majority's slippery slope argument unconvincing, because this case does not simply represent a sentence in the upper range of that allowable, but an obvious attempt to impose the maximum sentence available while simultaneously restricting Annotico's right to appeal and grounds for appeal to the greatest extent possible.
Sentencing statutes, like all criminal enactments, are to be construed strictly in favor of the accused, and against the State. R.C.2901.04(A); State v. Smathers (1996), 113 Ohio App.3d 155, 156,680 N.E.2d 676, 677. The record here shows inadequate consideration of the purposes of sentencing contained in R.C. 2929.11, and the guidelines for determining the length of sentence in R.C. 2929.12, if not a complete failure or affirmative disregard of those provisions. Even if the sentence does not require specific findings and reasons, the record must somehow show that the judge considered and followed the appropriate statutory guidelines. I would find that this sentence shows a failure to evaluate Annotico's conduct under the proper statutory provisions, and is therefore contrary to law pursuant to R.C. 2953.08(A)(4).[5]
The majority concludes that the judge properly justified her conduct by stating that a lesser sentence would demean the seriousness of the crime and by noting Annotico's prior criminal record, apparently believing that the judge went beyond the call of duty in making these technically unnecessary findings. However, the majority fails to note that invoking the statutory phrase demean the seriousness of the offender's conduct gives no clue as to the reasons for such a finding, especially when the statutory invocation is itself irrelevant. The bare statement of a statutory phrase does not aid a record that does not support the sentence imposed. Furthermore, because the judge ignored the relevant statutory provisions, the citation to an unnecessary finding shows a misapplication of the statute, rather than a cautious and thorough review.
The length of Annotico's prison term should have been informed by R.C.2929.12, which requires the judge to consider certain factors before imposing sentence. The first set of factors, contained in R.C.2929.12(B), concern factors that aggravate the seriousness of the offender's conduct, and include the following:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as a part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
None of these factors exists on the record here. Although R.C.2929.12(B) allows the judge to consider any other relevant factors that aggravate the seriousness of the offense, no such factors are apparent in the record, and the judge did not specify her reasons for finding Annotico's conduct so damnable. In contrast, the offense does fit one of the listed factors mitigating seriousness found in R.C. 2929.12(C), because Annotico did not cause or attempt to cause physical harm to any person or property as a result of the offense.
R.C. 2929.12(D) requires the judge to consider those factors that indicated Annotico was more likely to commit future offenses, including:
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28
or any other provision of the Revised Code for an earlier offense.
 (2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense.
The judge did cite Annotico's criminal record in imposing sentence, and his previous offenses do merit consideration as increasing the likelihood of future crime. As noted supra, however, Annotico's criminal history is far from extraordinary, and certainly was not serious enough to justify the sentence imposed. Again, I stress the fact that the judge's sentence was intended to achieve the maximum prison term available while providing the fewest avenues for appeal. The sentence here shows an intent to punish for punishment's sake, without regard or respect for the specific circumstances or the purposes of sentencing. Annotico's criminal record does not justify the sentence imposed, but is instead merely a convenient excuse for the sentence. Not only will Annotico be held in prison far longer than necessary to achieve the purposes of R.C. 2929.11, the citizens of Ohio will be forced to pay for that unnecessary and unfair imprisonment.
Finally, I would also vacate the $19,000 fines and remand that portion of the penalty for resentencing. The majority purports to affirm the $18,000 fine by claiming that Annotico waived error on the issue when he failed to file an affidavit of indigency, object to the fine or present evidence that he lacked the resources to pay the fine. I question the majority's reliance on State v. Frazier (Oct. 9, 1997), Cuyahoga App. No. 71675, unreported, as the majority's cohort disagreed about the viability of Frazier as recently as last year. See State v. Mullins (Nov. 4, 1999), Cuyahoga App. No. 74861, unreported (O'Donnell, J. concurring and dissenting). Although the majority can be seen as deferring to a prior decision of this court, this was exactly the tone of Judge O'Donnell's dissent in Mullins, because he noted that the original Frazier decision failed to follow this court's prior resolution of the issue. In fact, controlling authority in this court conflicts with Frazier, and finds that it was improper to impose a fine on an indigent regardless of whether an affidavit has been filed. State v. Jackson (1985), 21 Ohio App.3d 157, 159, 487 N.E.2d 585, 587. Despite recent case authority indicating that this disposition is allowable, I cannot agree that it is right. The case relied upon by the majority does not acknowledge its conflict with prior decisions of this Court.
Annotico was subject to a maximum fine of $20,000 for the first degree felony conviction, and up to $2,500 for the fifth degree felony conviction. R.C. 2929.18(A)(3)(a) and (e). He was subject to a mandatory fine of at least $10,000, subject to the following exception:
 If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender. R.C. 2929.18(B)(1).
R.C. 2929.18(E) then provides:
 A court that imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it.
With respect to the sentencing hearing, R.C. 2929.19(B)(6) provides:
 Before imposing a financial sanction under section 2929.18 of the Revised Code, the court shall consider the offender's ability to pay * * *.
Taken together, the statutes first mandate consideration of ability to pay even when an affidavit of indigency is not timely filed: this is accomplished by granting the judge discretion to hold a hearing if necessary to determine that ability. While an offender may be required to file an affidavit of indigency before a judge can waive imposition of a mandatory fine, other sections require the judge to determine ability to pay regardless of whether the affidavit is filed. Furthermore, the duty under R.C. 2929.19(B)(6) suggests that it would be an abuse of discretion to determine an offender was unable to pay but refuse to delay sentencing until an affidavit was filed. Cf. State v. Gibson (1998),80 Ohio St.3d 626, 687 N.E.2d 750 (finding no abuse of discretion in denying filing of an affidavit where judge expressly considered the offender's ability to pay before imposing fine).
The majority, citing Frazier, supra, finds that a judge need not inquire into an offender's ability to pay if the miscreant does not raise the issue himself. This conclusion is based on the proposition that although a judge has a duty to consider ability to pay, a reviewing court can presume compliance with this duty if faced with a silent record. State v. Adams (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus. Where, however, the record shows that no evidence was available to inform the judge about certain issues, this court has held that the Adams presumption is rebutted, because the lack of information shows a lack of consideration. State v. Ziko (1991),71 Ohio App.3d 832, 595 N.E.2d 1019. Moreover, the enactment of Senate Bill 2" (Am.Sub.S.B. No. 2) trumps any presumption of compliance or regularity at a sentencing hearing. State v. Ayala (Dec. 16, 1999), Cuyahoga App. No. 75207, unreported.
The record reveals no opportunity by Annotico or his lawyer to articulate any objections on either the term of incarceration or the fine. In this case, the only evidence in the record indicates Annotico's inability to pay any fine imposed. Immediately after imposing sentence, the judge questioned Annotico concerning his ability to pay an appellate lawyer; Annotico replied that he could not and the judge stated she would appoint appellate counsel and order transcripts at state expense for the purposes of his appeal.
Although the Frazier court ruled that a finding of indigence for purposes of appointing counsel does not necessarily indicate the inability to pay a fine, this ruling conflicts with numerous decisions of this court ruling that a finding of indigence for appointment of counsel is relevant to determining the ability to pay a fine, and that it is an abuse of discretion to impose a fine upon an offender who has been sentenced to prison and has been found indigent for purposes of appointment of counsel. Jackson, supra; State v. Davis (May 24, 1984), Cuyahoga App. No. 47622, unreported; State v. Copen (Dec. 21, 1981), Cuyahoga App. No. 43227, unreported; State v. Houston (Jan. 17, 1980), Cuyahoga App. No. 40124, unreported.
The pre-sentence investigation report, which the judge claimed to have reviewed prior to sentencing, revealed that Annotico had no financial assets, and significant debts including $20,000 in child and spousal support arrearages. Additionally his employment as a construction laborer was erratic, his income not substantial, and the imposition of a prison sentence restricted his future ability to pay the fine, especially as his prison term at this point remains just shy of ten years. I would find the imposition of these fines to be an abuse of discretion.
It is noteworthy that if one should find a waiver of objection to this fine(s), it was an error by Annotico's lawyer because he must have been aware of the imposition of a fine as part of the sentence and ought to have filed an affidavit of indigency before sentencing. Such error could be a basis for a timely petition for postconviction relief, or a basis to move this court to re-open his direct appeal, claiming ineffective assistance of appellate counsel. State v. Murnahan (1992),63 Ohio St.3d 60, 584 N.E.2d 1204. However, both alternatives are unlikely sources of relief; the first because Annotico failed to raise this issue of ineffective assistance in this appeal, and the second because of courts' reluctance to recognize ineffective assistance as anything but strategy. In short, the denial of Annotico's claim here practically defeats any opportunity he has to challenge the fine, even though the penalty is imposed because his lawyer failed to represent him adequately. The doctrine of plain error must be employed to prevent this injustice and protect public confidence in the integrity of the judicial system. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus; State v. Loines (1984), 20 Ohio App.3d 69, 71,-72, 484 N.E.2d 727, 731.
Even if one were to disregard the above arguments, the fines imposed are not supported by the record and must be vacated pursuant to R.C.2953.08(G)(1)(a). Annotico was subject to a possible fine of up to $20,000 for the first degree felony conviction, and another $2,500 fine for the fifth degree felony conviction. Even if the failure to submit an affidavit of indigency properly subjected Annotico to the mandatory portion of this fine, the mandatory amount was only $10,000. Under any analysis, any fine above this amount was discretionary and one can only conclude from this record that the judge failed to consider his ability to pay before imposing the $19,000 fines. The Frazier rationale concerning the affidavit of indigency would not apply to a discretionary fine.
The Frazier court also cited State v. Burkitt (1993), 89 Ohio App.3d 214,229, 624 N.E.2d 210, 220, for the proposition that a judge is required to consider the offender's ability to pay only if evidence is offered at the sentencing hearing. Frazier, supra. However, the Clark County Court of Appeals noted in Burkitt that the defendant was informed that the judge was considering imposition of a fine, and that the defendant was expressly invited to offer such evidence. Burkitt, supra. The Burkitt court thus found that the offender had been given a full opportunity to say why the court should not impose the sentence or the fines it proposes[.] Id. at 228, 624 N.E.2d at 220.
Here, the judge did not propose fines prior to imposing them, or invite Annotico to present evidence on his ability to pay the fines either before or after she imposed sentence. Therefore, even if the majority could somehow justify ignoring the controlling authority of Jackson, supra, the Burkitt decision does not support the majority's decision. Just as the prison terms have no support on this record, the fines imposed are not supported by the record and must be vacated pursuant to R.C. 2953.08(G)(1)(a).
Finally, although I concur in the majority's judgment with respect to the first through third assignments of error, I feel it necessary to note my discomfort with Annotico's conviction for possession of criminal tools, R.C. 2923.24. The indictment charged a single count of possession of criminal tools, alleging that Annotico possessed money, pagers, and an automobile; the jury was instructed that if it found that Annotico possessed any one of these items with a criminal purpose, it could convict Annotico of the offense. Annotico surrendered $127 found in his possession at the time of his arrest without challenge.
I find it disheartening that these practices are considered so far beyond controversy that a defendant would acquiesce to them. There are conflicting opinions concerning whether money and pagers can be considered criminal tools when the crime involved is drug possession and there is no evidence of drug transactions. See State v. McShan (1991),77 Ohio App.3d 781, 603 N.E.2d 1076 (majority finding sufficient evidence to find pager was criminal tool; Harper, J., dissenting). In this case there was no evidence linking the money to the drug possession offense, and no suggestion or instruction that either item met the test for prima facie proof under R.C. 2923.24(B).[6] Furthermore, I certainly would question those authorities finding that the mere possession or use of drugs while in a vehicle renders the vehicle a criminal tool. Such findings appear designed to obtain forfeiture of the vehicle rather than to address criminal behavior.
Finally, even though courts apparently have approved the use of single-count indictments charging several items as alternatively constituting the criminal tool, I am not comfortable allowing a conviction to stand when the jury could have convicted on a theory unsupported by the evidence. Because it is imperative that the jury link the possession of a particular article with an appropriate mens rea for that article, I would hold that this case presents distinct conceptual groupings requiring jury instructions that explain the need for jury unanimity in specifying which item or items constituted criminal tools. State v. Johnson (1989), 46 Ohio St.3d 96, 104-05, 545 N.E.2d 636, 644; see, also, United States v. Duncan (C.A.6, 1988), 850 F.2d 1104, 1111. We would thus avoid the danger that the jury convicted on a theory that was not supported by sufficient evidence, and future offenders need not acquiesce to the forfeiture of an article when the jury has determined it was not used for a criminal purpose. However, because such an issue requires full briefing and argument before decision, I concur in the majority's judgment on Annotico's first and second assignments of error because he did not raise the issue. On assignment of error three, I concur based upon Annotico's argument.
I would vacate Annotico's sentence in its entirety and remand for resentencing.
[1] My dissent here will raise many of the same issues surrounding the conviction and Judge McCafferty's sentencing of Annotico's co-defendant, Sheri Rigor. See State v. Rigor (2000), Cuyahoga App. No. 76201, unreported. Therefore, parts of my opinion here will be verbatim repetitions of my dissent in Rigor.
[2] The court considered all the required factors of the law. The court finds that prison is consistent with the purposes of R.C. 2929.11. * * * The sentence includes any extensions provided by law. * * * Drivers license suspended for one year.
[3] Indus. Comm. v. Broskey (1934), 128 Ohio St. 372, 381, 191 N.E. 456,460, by Justice Stephenson.
[4] Although the majority concedes the failure to do so with respect to the imposition of consecutive sentences.
[5] I note that the majority, despite its posturing, has not dismissed the appeal.
[6] I note that State v. McDonald (1987), 31 Ohio St.3d 47,509 N.E.2d 57, did not fully address the use of presumptions when deciding the facial constitutionality of R.C. 2923.24. The McDonald court ironically found that the mens rea requirement of purpose helped save the statute from vagueness and overbreadth challenges, yet failed to address the fact that the statutory presumptions eviscerate the requirement.