[Cite as *State v. Russell*, 2020-Ohio-5108.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-11 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-146 |
| | : | |
| WILLIE A. RUSSELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of October, 2020.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

BYRON K. SHAW, Atty. Reg. No. 0073124, 4800 Belmont Place, Huber Heights, Ohio 45424
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Willie A. Russell appeals from his conviction after a jury found him guilty on eight counts of trafficking cocaine.

{¶ 2} Russell advances five assignments of error. First, he alleges ineffective assistance of counsel at trial. Second, he contends his convictions should be reversed on the basis of entrapment. Third, he claims the trial court erred in allowing the State to introduce "prior bad acts" evidence at trial. Fourth, he contends the trial court erred in convicting him on count one where the State presented no evidence that he possessed an illegal substance on that occasion. Fifth, he asserts that the trial court erred by proceeding with trial and sentencing in his absence after he failed to appear.

{¶ 3} The charges against Russell involved his allegedly selling cocaine to undercover officers on multiple occasions between January 17, 2019 and March 7, 2019. The investigation began when a parolee under supervision advised police that he had been purchasing drugs from an individual identified as "Butter." After obtaining "Butter's" phone number from the parolee, detective Sean Williams texted the number and began communicating with "Butter." Williams subsequently engaged in eight drug transactions with "Butter," who was identified as Russell. The transactions occurred in public places, and Williams purchased cocaine each time.

{¶ 4} The record reflects that Russell did not appear for the final day of trial. His attorney could not reach him, and it was discovered that he had cut off his ankle monitor. The trial court issued a capias for his arrest, and the trial proceeded in his absence. The jury returned guilty verdicts on eight counts of possessing cocaine and eight counts of trafficking cocaine. The trial court found that Russell voluntarily had absented himself from the proceedings and moved forward with sentencing. After merging the possession

counts into the trafficking counts as allied offenses, the trial court imposed an aggregate 23-year prison term on eight counts of trafficking cocaine. This appeal followed.

{¶ 5} In his first assignment of error, Russell alleges ineffective assistance of counsel based on his attorney's failure to object and seek a mistrial when the prosecutor elicited "prior bad acts" evidence. This argument concerns detective Williams' testimony about a dispute that occurred during one of the drug transactions. Williams testified that he had purchased a half-ounce of cocaine from Russell, but when Williams weighed it, it was only 10 or 11 grams. An ounce is approximately 28 grams, which would make a half-ounce approximately 14 grams. Williams challenged Russell, claiming he had been shorted, and Williams indicated to Russell that an ounce was 28 grams. According to Williams, Russell responded that it was not, and added: "I've been doing this for several years. Back in '06, it was 28 grams." (Trial Tr. at 284.) (Although Russell's response is confusing because an ounce is and has always been approximately 28 grams, we perceive Russell's response to mean that in current street-drug parlance and practice, when one orders an ounce, or half an ounce, one now receives something considerably less than 28 or 14 grams respectively.)   The import of the statement was that Russell admitted being involved in the drug trade for years, not the number of grams in an ounce.

{¶ 6} Russell argues that Williams' testimony about him "doing this for several years," i.e., selling drugs, was inadmissible character evidence under Evid.R. 404(B) and R.C. 2945.59. He contends his attorney provided ineffective assistance by failing to object and request a mistrial. We disagree. The rule and the statute both generally prohibit the admission of other-acts evidence to prove a character trait to establish that the defendant acted in conformity with that trait.

{¶ 7} Other-acts evidence is admissible, however, where it is relevant to an issue in the case, where it is used for a legitimate purpose (i.e., other than to prove a character trait to demonstrate conduct in conformity therewith), and where the probative value of the other-acts evidence is not substantially outweighed by the danger of unfair prejudice. *State v. Middleton*, 2d Dist. Greene No. 2019-CA-22, 2020-Ohio-1308, ¶ 25-26. For a comprehensive review of admissibility of Evid.R. 404(B) evidence, see the very recent opinion of *State v. Hartman*, Ohio Slip Opinion No. 2020-Ohio-4440, __ N.E.3d __, where the supreme court reiterated and clarified that "other acts" evidence must prove something other than a defendant's disposition or propensity to commit certain acts and must be probative of a proper particular purpose for which it is offered. Other-acts evidence must be excluded under Evid.R. 403(A) when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. However, the *Hartman* decision only directly analyzed the specific purposes for which other acts evidence is permitted by Crim.R. 404(B): "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Hartman* did not deal with other acts evidence as it relates to countering a claim of entrapment, a claim which relates to an attempt to negate a defendant's predisposition.

{¶ 8} Predisposition to commit an offense is precisely what is at issue for countering a claim of entrapment. In an entrapment case, "evidence relevant to predisposition should be freely admitted." *State v. Doran*, 5 Ohio St.3d 187, 192, 449 N.E.2d 1295 (1983). In *Doran*, the Supreme Court listed admissible evidence:

[T]he following matters would certainly be relevant on the issue of predisposition: (1) the accused's previous involvement in criminal activity of

the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity.

*Id.*

{¶ 9} In the present case, Russell contends he raised the defense of entrapment in the trial court.[1] The ultimate issue for entrapment is whether "the accused lacked the predisposition to commit the offense with which he is charged." *State v. Seebeck-Horstman*, 67 Ohio App.3d 443, 446, 587 N.E.2d 359 (2d Dist.1990). In our view, Russell could not obligate the State to address a predisposition to engage in drug offenses while simultaneously precluding the State from presenting evidence of his history of engaging in such offenses.  Detective Williams' brief testimony about Russell engaging in prior drug sales was relevant to predisposition, including his prior involvement in drug sales and his expert knowledge of the subject. These items are relevant factors under *Doran*. That evidence was introduced for a legitimate purpose -- to counter the entrapment argument -- and was not unfairly prejudicial. Therefore, defense counsel did not render

---

[1] Russell unquestionably raises entrapment as an assignment of error, but it is unclear how formally Russell raised entrapment as a defense at trial. Defense counsel did suggest in opening statements and closing arguments that all of the drug transactions were prompted by police activity, that police offered to "buy" rather than Russell offering to "sell," that Russell's "readiness" was "occasioned by the police," that "every transaction was at the behest of the State," and that Russell had not been involved in prior activity selling cocaine. It does not appear that Russell formally raised the affirmative defense of entrapment before trial or that he requested or obtained a jury instruction on entrapment. In any event, for present purposes we will accept Russell's representation and argument that he relied on entrapment below and that he "produced the supporting evidence of entrapment by law enforcement for the drug dealing." (Appellant's Brief at 7.)

ineffective assistance by failing to object to the testimony. Counsel reasonably may have decided not to object because (1) the testimony was admissible and (2) objecting would have drawn attention to the damaging nature of the testimony with regard to entrapment. Moreover, even if we were to find error in Williams' isolated reference to Russell's prior drug activity, we would find the error harmless in the context of the entire record before us.

{¶ 10} Under his first assignment of error, Russell also suggests that defense counsel provided ineffective assistance by *never* objecting to anything during the State's case-in-chief. Russell has not identified anything in particular that was objectionable, however, and we will not presume prejudicially deficient representation from counsel's silence. Absent a specific argument with regard to defense counsel's failure to object, we find Russell's argument to be unpersuasive. The first assignment of error is overruled.

{¶ 11} In his second assignment of error, Russell contends his convictions should be reversed on the basis of entrapment. He argues that the police used the parolee's phone and initiated text messages with him seeking drug transactions, told Russell where to meet, obtained a picture of him beforehand, and conducted eight transactions before arresting him. Under these circumstances, Russell asserts that entrapment occurred and that his convictions should be reversed.

{¶ 12} Russell appears to be arguing that the jury's rejection of his entrapment defense was against the manifest weight of the evidence. Once again, we disagree. Entrapment is established where "the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *Doran,* 5 Ohio St.3d

187, 449 N.E.2d 1295, at paragraph two of the syllabus. "However, entrapment is not established when government officials 'merely afford opportunities or facilities for the commission of the offense' and it is shown that the accused was predisposed to commit the offense." *Id.* at 192.

{¶ 13} "For the entrapment defense to apply, police officers must plant in the mind of the defendant the original idea or purpose, thus furnishing from the start the incentive or motivation to commit an offense that the defendant had not considered, and which he would not have carried out except for that incentive. The law permits a police officer to go as far as to suggest an offense and provide the opportunity for the defendant to commit the offense. If the defendant is already disposed to commit the offense and acts pursuant to a criminal idea or purpose of his own, then there is no entrapment." (Citations omitted.) *State v. Burg*, 2d Dist. Greene No. 04CA94, 2005-Ohio-3666, ¶ 21-22.

{¶ 14} Here the jury reasonably could have found that the police gave Russell opportunities to commit drug offenses but that they did not plant in his mind the original idea to sell drugs. The record reflects that a parolee told police he had been purchasing drugs from Russell. Thereafter, detective Williams' initial conversations with Russell involved the use of slang terminology that was understood by Russell and was indicative of his familiarity with selling drugs. (Trial Tr. at 234-240.) As noted above, Russell also admitted that he had been "doing this for several years." (*Id.* at 284.) Based on the record before us, we do not believe the jury clearly lost its way and created a manifest miscarriage of justice by rejecting an entrapment defense. The evidence did not weigh heavily against Russell's convictions. The second assignment of error is overruled.

{¶ 15} In his third assignment of error, Russell contends the trial court erred in

admitting the other-acts evidence we addressed under the first assignment of error. Despite the fact that defense counsel never objected, Russell argues that a mistrial should have been declared or, at a minimum, the jury should have been admonished after detective Williams testified about Russell's claim to have been "doing this for several years." Based on the reasoning set forth above, however, we see no error—much less plain error—in the trial court's admission of the testimony. Accordingly, the third assignment of error is overruled.

{¶ 16} In his fourth assignment of error, Russell contends the trial court erred in convicting him on count one of the indictment where "no evidence was introduced at trial to prove appellant actually had an illegal substance on the first alleged drug transaction of January 17, 2019." Russell claims the State presented no evidence of the substance detective Williams obtained being tested at the scene or later. Therefore, he argues that the State failed to prove it was cocaine.

{¶ 17} Russell's argument is without merit. The substance Williams purchased from him on January 17, 2019 was inventoried with the number "2019-1516." (Trial Tr. 253-255.) It was booked into evidence that day. (*Id.* at 258.) The same substance later was tested in a lab and found to contain less than one gram of cocaine. (*Id.* at 487-489.) Therefore, the record does not support Russell's claim that the State presented no evidence that the substance obtained on January 17, 2019 was cocaine. The fourth assignment of error is overruled.

{¶ 18} In his fifth assignment of error, Russell contends the trial court erred in proceeding with trial and sentencing in his absence. He argues that "[t]o have suspended proceedings for a day or two or even three to ensure [Russell's] presence in the courtroom

would not have created an unnecessary delay and would have been conducive with the preservation of his rights to be present and to make a statement at sentencing for mitigation purposes."

{¶ 19} We see no error in the trial court's proceeding in Russell's absence. The record reflects that he failed to appear for the third and final day of trial. Defense counsel and a representative of the prosecutor's office were unable to contact him and did not know why he was absent. The trial court issued a capias, and a representative of the probation department went to Russell's residence, where it was discovered that he had cut off his electronic-monitoring device and left. (Trial Tr. at 416-417, 619-621.) Under these circumstances, the trial court found that Russell's absence was voluntary and that, under Crim.R. 43, it was permitted to continue the trial in his absence. (*Id.* at 621-622.) The trial court also deemed Russell to have waived his right to allocution by virtue of his voluntary absence. (*Id.* at 622-623.) Therefore, the trial court proceeded to impose sentence. (*Id.* at 625-641.)

{¶ 20} Upon review, we note that defense counsel did not object, and we see no plain error in the trial court's handling of the situation. Under Crim.R. 42(A), "the defendant's voluntary absence after the trial has been commenced in the defendant's presence shall not prevent continuing the trial to and including the verdict." Here the record supports the trial court's finding that Russell's absence on the final day of trial was voluntary. Therefore, the trial court did not err in concluding the trial without him.

{¶ 21} As for sentencing, Crim.R. 32(A) grants a defendant a right to speak in mitigation of punishment. Russell was not deprived of this right, which may be waived. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 200. Russell

waived his right to allocution by voluntarily failing to appear for sentencing. *See In re Jason R.*, 77 Ohio Misc. 2d 37, 42, 666 N.E.2d 666 (C.P.1995) ("This court concedes that an accused's right of allocution, affording an accused the opportunity to address the court passing judgment upon him, is necessarily dependent on the presence of the accused at sentencing. * * * [Defendant] had the opportunity to be present and to address this court at disposition but effectively waived this right through his disregard of the hearing.").

{¶ 22} In opposition to the foregoing conclusion, Russell contends no harm would have been done by suspending the proceedings "for a day or two or even three" to ensure his presence. Aside from the fact that the trial court had no obligation to accommodate Russell's voluntary absence, one problem with his argument is that the trial court also had no way to know whether a brief delay *would* ensure his presence. In fact, it appears that Russell was not located and arrested on the capias until approximately one month after it was issued. For the foregoing reasons, the fifth assignment of error is overruled.

{¶ 23} The judgment of the Greene County Common Pleas Court is affirmed.

. . . . . . . . . . . . .


TUCKER, P.J. and WELBAUM, J., concur.


Copies sent to:

Marcy A. Vonderwell
Byron K. Shaw
Hon. Stephen Wolaver