DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. The jury found James A. Gibson, defendant below and appellant herein, guilty of illegal manufacture of drugs, in violation of R.C. 2925.04.
 {¶ 2} Appellant raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
"UNDER THE DUE PROCESS CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS, MR. GIBSON'S CONVICTION MUST BE REVERSED BECAUSE THE STATE DID NOT PROVIDE SUFFICIENT EVIDENCE TO SUSTAIN THE JURY'S GUILTY VERDICT. THE VERDICT WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN VIOLATION OF R.C. 2929.18(B)(1) BY IMPOSING A MANDATORY $7500 FINE UPON MR. GIBSON ATTENDANT TO HIS CONVICTION."
THIRD ASSIGNMENT OF ERROR:
"MR. GIBSON WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT INVOLVING IMPROPER COMMENTS ON THE STATE'S PERSONAL BELIEFS REGARDING HIS GUILT AND A GROSS MISSTATEMENT OF THE FACTS OF THE CASE DURING SUMMATION. COUNSEL'S FAILURE TO OBJECT TO THIS MISCONDUCT WAS INEFFECTIVE ASSISTANCE OF COUNSEL."
FOURTH ASSIGNMENT OF ERROR:
"MR. GIBSON WAS DEPRIVED OF A FAIR TRIAL BECAUSE THE STATE WAS PERMITTED TO EXERCISE A PEREMPTORY CHALLENGE AGAINST A BLACK JUROR IN A RACIALLY DISCRIMINATORY MANNER."
 {¶ 3} On May 29, 2001, the Hillsboro City Fire Department was dispatched to 7131 Fields Lane in Highland County. Upon their arrival, the firefighters discovered two men, Christopher Purdin, Sr., and Chester Wyatt, who had suffered severe injuries. After investigating the premises, investigators learned that a clandestine methamphetamine laboratory had apparently exploded. Purdin and Wyatt subsequently died.
 {¶ 4} On May 9, 2002, the Highland County Grand Jury returned an indictment charging appellant, Chat Heflin, and Robert Gibson with illegal manufacture of drugs and two counts of involuntary manslaughter.
 {¶ 5} The following facts were adduced at trial. On May 29, 2001, appellant, Purdin, Wyatt, Heflin, Gibson, and Charles Lunsford were planning a "big cook-off," during which they intended to produce as much methamphetamine as possible. According to Lunsford, he and appellant were to be the primary "cookers," while Gibson "was just there" and the others either wanted to learn or to help manufacture the methamphetamine.
 {¶ 6} Joyce Meyers was at the Fields Lane residence on the evening of May 28, 2001, and she saw appellant, Heflin, and Purdin with "a whole bunch of [white, oblong] pills." During previous times when she had been at the residence while appellant, Purdin, Heflin, and Wyatt were present, she had smelled strong ammonia odors. Also on the evening of May 28, 2001, Purdin's son, Christopher, saw Heflin crushing pills and popping battery tops while appellant sat next to Heflin. Christopher heard appellant state that "they knew a new way of making [methamphetamine]."
 {¶ 7} Christopher stated that on the day of the apparent explosion, appellant was in the attic, where the methamphetamine lab was located, and that "they" were "making crystal meth." Following the explosion, he saw Heflin and appellant fall out of the attic. Heflin and appellant then got some water. Christopher asked Helfin and appellant for help with his injured father and Wyatt. They stated that they would call 911 and "be right back." However, they never returned.
 {¶ 8} After the explosion, Lunsford and Gibson eventually located appellant and took him to 6956 Sherry Drive. Appellant stated that he did not want to go to the hospital because he did not want to end up in prison.
 {¶ 9} During closing arguments, the state summarized some of the evidence as follows: (1) "Joyce Meyers testified that she saw [appellant] counting pills, white oblong pills"; (2) Christopher stated that the night before May 29, 2001, he saw appellant at the residence and appellant claimed that he had a new way of cooking; and (3) Christopher saw appellant with Heflin while the pills were being crushed and the batteries were being stripped. The prosecutor argued that the evidence showed that appellant "engaged in a part of the production of methamphetamine by stripping batteries, counting and crushing pills and he was there to show everyone his new way of cooking."
 {¶ 10} During his closing arguments, appellant's counsel tried "to correct one thing that [the prosecutor] said about Joyce Meyers, about her testimony. * * * * What she saw was Mr. Heflin crushing pills but [appellant] was sitting there at the same table doing nothing."
 {¶ 11} On October 22, 2002, the jury found appellant guilty of illegal manufacture of drugs, but not guilty of the two counts of involuntary manslaughter. Appellant filed a timely notice of appeal.
 I {¶ 12} In his first assignment of error, appellant asserts that the record does not contain sufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. Appellant contends that while the evidence shows that he was present at the scene of the offense, it does not show that he participated in the crime. He claims that he was present because he wanted to learn how to produce methamphetamine and that watching drugs being manufactured does not constitute a crime. Appellant asserts that to be convicted, the evidence must show that he instructed or directed the drug-making activity.
 {¶ 13} Appellee asserts that the circumstantial evidence regarding appellant's conduct before and after the incident adequately establishes that he committed the offense, either as a principal offender or as an aider and abettor.
 {¶ 14} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997), 78 Ohio St.3d 380,386, 678 N.E.2d 541 (stating that "sufficiency is the test of adequacy"); State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. See Statev. Issa (2001), 93 Ohio St.3d 49, 66, 752 N.E.2d 904 (citing Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; Jenks,61 Ohio St.3d at 273). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). Reviewing courts will not overturn convictions on sufficiency of evidence claims unless reasonable minds could not reach the conclusion reached by the trier of fact. See State v. Tibbetts (2001), 92 Ohio St.3d 146, 749 N.E.2d 226;State v. Treesh (2001), 90 Ohio St.3d 460, 739 N.E.2d 749.
 {¶ 15} On the other hand, when an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses, while bearing in mind that credibility generally is an issue for the trier of fact to resolve. SeeIssa, 93 Ohio St.3d at 67; State v. Thomas (1982), 70 Ohio St.2d 79, 80,434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387 (quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 16} In the case at bar, the jury convicted appellant of illegal manufacture of drugs. See R.C. 2925.04(A). Illegal manufacture of drugs is defined as "knowingly manufactur[ing] or otherwise engag[ing] in any part of the production of a controlled substance." R.C. 2925.04(A). "Manufacture" means to "plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production." R.C. 2925.01(J).
Under R.C. 2923.03(F),[1] a defendant "may be convicted of [an] offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity.'" State v. Herring, 94 Ohio St.3d 246, 251,762 N.E.2d 940, 2002-Ohio-796. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."
State v. Johnson (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. "`Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" Id. at 245 (quoting State v. Pruett (1971), 28 Ohio App.2d 29, 34,273 N.E.2d 884).
 {¶ 17} However, "`the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" Id. at 243 (quoting State v. Widner (1982),69 Ohio St.2d 267, 269, 431 N.E.2d 1025. "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." Id.
 {¶ 18} In the instant case, we believe that the evidence sufficiently establishes that appellant engaged in the illegal manufacture of methamphetamine, either as a principal offender or as an aider and abettor, and not, as appellant claims, that appellant was merely present at the residence. The evidence reveals that appellant "had a new way of cooking." Lunsford stated that appellant was to be one of the cookers. Thus, contrary to appellant's assertion, the evidence does not show that appellant was simply present at the residence. The evidence further reveals that at the time of the explosion, appellant was present in the attic where the methamphetamine was being manufactured and that he suffered injuries associated with a chemical burn. From this evidence, the jury could reasonably infer that appellant was in a position close enough to the chemicals used to make methamphetamine that he must have been engaged in part of its production. Moreover, after the explosion, appellant fled the scene for fear of being sent to prison. Appellant's fleeing after the offense further leads to a reasonable inference that appellant was more than an innocent bystander.
 {¶ 19} Therefore, we believe that the evidence sufficiently shows that appellant committed the offense of illegal manufacture of drugs. Thus, the state presented sufficient evidence to support appellant's conviction. Moreover, the above evidence also shows that the jury did not clearly lose its way and commit a manifest miscarriage of justice by convicting appellant.
 {¶ 20} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 21} In his second assignment of error, appellant argues that the trial court erred by imposing a $7500 mandatory fine. He claims that his indigent status prohibited the trial court from imposing the fine. Appellant asserts that the affidavit of indigency he filed on June 5, 2002 for purposes of appointing trial counsel was sufficient to comply with the statute.
 {¶ 22} Appellee notes that appellant filed an affidavit of indigency for purposes of appointing trial counsel, but argues that the affidavit was not sufficient to show indigency for purposes of imposing a mandatory fine. We agree.
 {¶ 23} R.C. 2929.18(B)(1) requires a trial court to impose a mandatory fine upon an offender convicted of a first, second, or third degree felony violation of R.C. 2925.04. The statute, however, offers relief to indigent defendants. The statute provides:
If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.
A defendant opposing a mandatory fine has the burden to demonstrate that he is indigent and unable to pay the fine. See State v. Gipson
(1998), 80 Ohio St.3d 626, 687 N.E.2d 750. Simply because a defendant is indigent at the time of sentencing, however, does not mean that the trial court is prohibited from imposing a mandatory fine. Id. Instead, the trial court may consider the defendant's future ability to pay. Id.; see, also, State v. King (June 29, 2001), Auglaize App. No. 2-01-03.
 {¶ 24} Moreover, "[w]here the offender does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal." State v. Annotico (Dec. 14, 2000), Cuyahoga App. No. 76202 (citing State v. Burkitt (1993), 89 Ohio App.3d 214, 229, 624 N.E.2d 210).
 {¶ 25} An indigency affidavit filed for purposes of obtaining counsel does not satisfy R.C. 2929.18(B)(1). State v. Grissom, Lake App. No. 2001-L-107, 2002-Ohio-5154; King. "[T]here is an important distinction to be made between indigency as it relates to a defendant's constitutional right to counsel and proof of indigency required to avoid a mandatory statutory fine." Id.
"The basis for requiring a determination that the defendant is unable to pay a mandatory fine when the trial court previously found the defendant to be indigent for purposes of receiving appointed counsel is simple. Many criminal defendants, even those who have steady income, are not able to raise sufficient funds to pay the retainer fee required by private counsel before counsel will make an initial appearance. This difference is even more evident in cases where the defendant has to utilize his financial resources to raise sufficient bond money in order to be released from jail. In contrast, the payment of a mandatory fine over a period of time is not equivalent to the immediate need for legal representation at the initiation of criminal proceedings."
State v. Powell (1992), 78 Ohio App.3d 784, 789-90, 605 N.E.2d 1337, quoted in State v. Bybee (Aug. 30, 2000), Summit App. No. 19758.
 {¶ 26} In the case at bar, appellant did not challenge his ability to pay the mandatory fine. Instead, appellant simply filed an affidavit alleging that he is indigent for purposes of appointed counsel. Therefore, appellant did not sufficiently demonstrate to the trial court that he is indigent for purposes of imposing a mandatory fine. See King, supra (concluding that the defendant's initial affidavit of indigency filed for the purpose of obtaining counsel did not establish that he was indigent for the purpose of paying the fine); State v. Wilton (March 31, 2000), Wood App. No. WD 99-040 (stating that "[e]vidence that an incarcerated offender does not have the means to retain counsel for his defense does not, in and of itself, establish that, once released, the offender will be unable to pay an imposed fine").
 {¶ 27} Appellant nevertheless argues that in State v. Clark, Pickaway App. No. 02CA12, 2002-Ohio-6684, we held that a trial court may not impose a mandatory fine upon an indigent defendant when the defendant has filed an indigency affidavit for purposes of obtaining counsel. InClark, however, the issue was whether a trial court could impose court costs, not a mandatory fine. We stated: "Costs should not be assessed against a defendant previously determined to be indigent unless the court determines that the defendant's financial status has changed." Our opinion did not address whether a trial court could impose a mandatory fine upon an offender who previously filed an indigency affidavit for purposes of obtaining counsel.
 {¶ 28} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 29} In his third assignment of error, appellant contends that he did not receive a fair trial due to prosecutorial misconduct. In particular, appellant asserts that the prosecutor improperly expressed a personal belief as to appellant's guilt and that the prosecutor blatantly misstated the evidence. Appellant objects to the prosecutor's statement during opening statements that "[w]e honestly believe once you hear all the testimony and you go back in that room to deliberate that you will after careful consideration of all the evidence, it is our belief that you will have only one conclusion to make, and that is that these defendants are guilty. [sic]" Appellant further claims that during closing arguments, the prosecutor "completely fabricated testimony that did not occur at trial." Appellant objects to the prosecutor's statements that: (1) Joyce Meyers saw appellant counting white oblong pills at the Fields Lane residence; (2) appellant was involved in crushing up pills and stripping batteries; and (3) appellant was going to demonstrate a new way of cooking. Appellant observes that trial counsel failed to object to the above statements, but asserts that we may recognize the error under either a plain error or ineffective assistance of counsel analysis.
 {¶ 30} Appellee contends that the prosecutor's comment during opening statements was "nothing more than a statement to a belief as to what will be shown at the close of evidence." Appellee further asserts that the prosecutor's comments during closing arguments were not improper. Appellee argues that during closing arguments, the parties are granted wide latitude to make deductions and inferences from the evidence and that "[i]t is a reasonable inference and reasonable deduction that [appellant] was stripping batteries and counting and/or crushing pills and not just sitting there watching as [appellant] claimed since [a]ppellant was demonstrating a new way of cooking and showing others how to manufacture methamphetamine."
 {¶ 31} Because appellant failed to object to the prosecutor's remarks, appellant has waived all but plain error. See Crim.R. 52; Statev. Hartman (2001), 93 Ohio St.3d 274, 294, 754 N.E.2d 1150, 1173; Statev. Ballew (1996), 76 Ohio St.3d 244, 254, 667 N.E.2d 369. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See, e.g., State v. Barnes (2002),94 Ohio St.3d 21, 27, 759 N.E.2d 1240; State v. Hill (2001),92 Ohio St.3d 191, 196, 749 N.E.2d 274. Plain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. See, e.g., State v. Jackson (2001),92 Ohio St.3d 436, 438, 751 N.E.2d 946; State v. Sanders (2001),92 Ohio St.3d 245, 263, 750 N.E.2d 90.
 {¶ 32} If the prosecutor's remarks do not rise to the level of plain error, appellant requests that we conclude that trial counsel's failure to object to the allegedly improper remarks constituted ineffective assistance of counsel. In order to reverse a conviction on ineffective assistance of counsel grounds, a defendant must show (1) that his counsel's performance was deficient, and (2) that such deficient performance prejudiced the defense so as to deprive him of a fair trial. See Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904;State v. Goff (1998), 82 Ohio St.3d 123, 139, 694 N.E.2d 916. Both prongs of this test need not be analyzed if a claim can be resolved under only one of them. See State v. Madrigal (2000), 87 Ohio St.3d 378, 389,721 N.E.2d 52; State v. Loza (1994), 71 Ohio St.3d 61, 83, 641 N.E.2d 1082.
 {¶ 33} In the case at bar, we do not believe that trial counsel's failure to object to the prosecutor's remarks constitutes plain error.
 {¶ 34} "The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial." State v.Jackson (2001), 92 Ohio St.3d 436, 441, 751 N.E.2d 946, 956. "The test for prejudice regarding prosecutorial misconduct * * * is `"`whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'"' Hartman, 93 Ohio St.3d at 295
(quoting State v. Hessler (2000), 90 Ohio St.3d 108, 125, 734 N.E.2d 1237
and State v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883). To establish prejudice, an accused must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. State v. Loza (1994),71 Ohio St.3d 61, 83, 641 N.E.2d 1082.
 {¶ 35} During closing arguments, the prosecution is given wide latitude to convincingly advance its strongest arguments and positions. See State v. Phillips (1995), 74 Ohio St.3d 72, 90, 656 N.E.2d 643; Statev. Treesh (2001), 90 Ohio St.3d 460, 466, 739 N.E.2d 749. Nevertheless, the prosecutor must avoid going beyond the evidence presented to the jury in order to obtain a conviction. See, e.g., Smith, 14 Ohio St.3d at 14. "[P]rosecutors must be diligent in their efforts to stay within the boundaries of acceptable argument and must refrain from the desire to make outlandish remarks, misstate evidence, or confuse legal concepts."State v. Fears (1999), 86 Ohio St.3d 329, 332, 715 N.E.2d 136.
 {¶ 36} When a defendant alleges prosecutorial misconduct, an appellate court is required to determine whether the comments were improper and, if so, whether the remarks prejudicially affected the substantive rights of the defendant. See Phillips, 74 Ohio St.3d at 90, citing Smith, 14 Ohio St.3d at 14. Further, an appellate court must examine the prosecution's closing argument in its entirety to determine whether the defendant was prejudiced by the prosecutor's comments.Treesh, 90 Ohio St.3d at 466; State v. Keenan (1993), 66 Ohio St.3d 402,410, 613 N.E.2d 203; Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940, 71 L.Ed.2d 78 ("[T]he touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").
 {¶ 37} In the instant case, we do not believe that the prosecutor's comments deprived appellant of a fair trial. The record does not show that a reasonable probability exists that, but for the prosecutor's allegedly improper remarks, the result of the proceeding would have been different.
 {¶ 38} Appellant first complains that the prosecutor committed misconduct by stating in the opening statement that "[w]e honestly believe once you hear all the testimony and you go back in that room to deliberate that you will after careful consideration of all the evidence, it is our belief that you will have only one conclusion to make, and that is that [appellant is] guilty. [sic]." We do not believe that the prosecutor's statement was improper.
 {¶ 39} While a prosecutor may not express his personal opinion as to the guilt of the accused, see State v. Thayer (1931), 124 Ohio St. 1,176 N.E.2d 656, a prosecutor may argue a conclusion of guilt based on the evidence admitted in the case. See State v. Overholt, Medina App. No. 02CA0108-M, 2003-Ohio-3500; State v. Wells (Sept. 8, 1994), Gallia App. No. 93CA9. For example, it is improper for a prosecutor to state: "I think the credibility of the State's witnesses, frankly, is unmatched by the credibility of the defense witnesses; and again when he finished his closing argument with this defendant is as guilty as I think everybody in this jury knows he is." State v. Fields, Hamilton App. Nos. C-010720 and C-010688, 2002-Ohio-4451. A prosecutor may, however, relate an opinion or belief "if it is framed in terms of the evidence admitted in the case."State v. McComas (Feb. 15, 1996), Lawrence App. No. 93CA32; Wells
(finding that prosecutor's statement that "the state believes" proper if based upon the evidence submitted at trial); State v. Ullum (May 2, 1985), Washington App. No. 83 CA 23, unreported (finding the statements "we believe that the evidence has shown" and "we believe that at the close of the evidence * * * you will have no option but to return a verdict of guilty * * *" proper). Thus, when "the opinion statement is based upon the evidence admitted in the case, the defendant suffers no prejudice." McComas.
 {¶ 40} In the instant case, the prosecutor's opening statement merely related what the state believed the evidence will show. The prosecutor's statement did not represent an improper opinion regarding appellant's guilt.
 {¶ 41} Appellant next asserts that the prosecutor misstated the evidence. While we agree that the prosecutor appears to have misstated the evidence regarding whether appellant stripped batteries and crushed pills, we do not believe that the misstatements prejudicially affected the proceedings. Substantial evidence exists that appellant was involved in manufacturing methamphetamine. Christopher Purdin testified that appellant stated that he had a new way of making methamphetamine. At the time of the explosion, appellant was in the attic, where the methamphetamine was manufactured, and he suffered injuries indicating that he was in close contact with the chemicals used to manufacture methamphetamine. Appellant has failed to show that had the prosecutor not made the misstatements of evidence the result of the proceeding would have been different.
 {¶ 42} We further note that during his closing argument, appellant's trial counsel capably called the jury's attention to the prosecutor's misstatement of evidence. Thus, the jury was aware of the conflicting interpretations of the evidence and was best-suited to resolve the conflict and to use its collective memory in determining which interpretation to rely upon when deliberating.
 {¶ 43} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 IV {¶ 44} In his reply brief, appellant withdrew his fourth assignment of error and we need not consider it.
 {¶ 45} Accordingly, based upon the foregoing reasons, we overrule all of appellant's assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] R.C. 2923.03 provides, in relevant part:
(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * *
(2) Aid or abet another in committing the offense * * *
(C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section2923.02 (Attempt)of the Revised Code.
* * *
(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.